## WILLIAMS *v.* UNITED STATES.

No. 123. Argued December 10, 1945.—Decided April 1, 1946.

712

*Samuel Slaff* argued the cause for petitioner. *M. J. Dougherty* filed a brief for petitioner.

*Irving S. Shapiro* argued the cause for the United States. With him on the brief were *Solicitor General McGrath, W. Marvin Smith* and *Robert S. Erdahl.*

MR. JUSTICE BURTON delivered the opinion of the Court.

This case turns upon the applicability of the Assimilative Crimes Act, § 289 of the Criminal Code, 54 Stat. 234, 18 U. S. C. § 468, which reads:

> "Whoever, within the territorial limits of any State, organized Territory, or district, but within or upon any of the places now existing or hereafter reserved or acquired, described in section 272 of the Criminal Code (U. S. C., title 18, sec. 451),[1] shall do or omit the doing of any act or thing which is not made penal by any laws of Congress, but which if committed or omitted within the jurisdiction of the State, Terri-

---

[1] "Sec. 272. The crimes and offenses defined in this chapter [§§ 272–289, 18 U. S. C. §§ 451–468] shall be punished as herein prescribed:

. . . . .

"Third. *When committed within or on any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof,* or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building." (Italics supplied.) 35 Stat. 1142, as amended by 54 Stat. 304, 18 U. S. C. § 451.

tory, or district in which such place is situated, by the laws thereof in force on February 1, 1940, and remaining in force at the time of the doing or omitting the doing of such act or thing, would be penal, shall be deemed guilty of a like offense and be subject to a like punishment."

The petitioner, a married white man, was convicted in the District Court of the United States for the District of Arizona, of having had sexual intercourse in 1943, within the Colorado River Indian Reservation in Arizona, with an unmarried Indian girl who was then over 16, but under 18, years of age. There was no charge or evidence of use of force by the petitioner or of lack of consent by the girl. The Circuit Court of Appeals affirmed the judgment by a divided court. We granted certiorari under § 240 (a) of the Judicial Code because of the importance of the case in interpreting the Assimilative Crimes Act.

It is not disputed that this Indian reservation is "reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof," [2] or that it is "Indian country" within the meaning of Rev. Stat. § 2145.[3] This means that many sections of the Federal Criminal Code apply to the reservation, including not only the Assimilative Crimes Act, but also those making penal the offenses of rape,[4] assault with intent to

---

[2] See note 1.

[3] "Except as to . . . [certain crimes not material here] the general laws of the United States as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, . . . shall extend to the Indian country." Rev. Stat. § 2145, 25 U, S. C. § 217. *Donnelly* v. *United States,* 228 U. S. 243, 269; *Ex parte Crow Dog,* 109 U. S. 556; *United States* v. *Chavez,* 290 U. S. 357; *United States* v. *McGowan,* 302 U. S. 535; Cohen, Handbook of Federal Indian Law, pp. 5, *et seq.,* and 358, *et seq.*

[4] "Whoever shall commit the crime of rape shall suffer death." Criminal Code, § 278, 35 Stat. 1143, 18 U. S. C. § 457.

commit rape,[5] having carnal knowledge of a girl,[6] adultery[7] and fornication.[8]

While the laws and courts of the State of Arizona may have jurisdiction over offenses committed on this reservation between persons who are not Indians,[9] the laws and courts of the United States, rather than those of Arizona, have jurisdiction over offenses committed there, as in this case, by one who is not an Indian against one who is an Indian.[10]

---

[5] "Whoever shall assault another with intent to commit . . . rape, shall be imprisoned not more than twenty years. . . ." Criminal Code, § 276, 35 Stat. 1143, 18 U. S. C. § 455.

[6] "Whoever shall carnally and unlawfully know any female under the age of sixteen years, or shall be accessory to such carnal and unlawful knowledge before the fact, shall, for a first offense, be imprisoned not more than fifteen years, and for a subsequent offense be imprisoned not more than thirty years." Criminal Code, § 279, 35 Stat. 1143, 18 U. S. C. § 458.

[7] ". . . the offenses defined in this chapter [§§ 311–322] shall be punished as hereinafter provided, when committed within any Territory or District, or within or upon any place within the exclusive jurisdiction of the United States." Criminal Code, § 311, 35 Stat. 1148, 18 U. S. C. § 511.

"Whoever shall commit adultery shall be imprisoned not more than three years; . . . and when such act is committed between a married man and a woman who is unmarried, the man shall be deemed guilty of adultery." Criminal Code, § 316, 35 Stat. 1149, 18 U. S. C. § 516.

[8] "If any unmarried man or woman commits fornication, each shall be fined not more than one hundred dollars, or imprisoned not more than six months." Criminal Code, § 318, 35 Stat. 1149, 18 U. S. C. § 518.

[9] *New York ex rel. Ray* v. *Martin,* 326 U. S. 496; *United States* v. *McBratney,* 104 U. S. 621; *Draper* v. *United States,* 164 U. S. 240.

[10] *Donnelly* v. *United States, supra; United States* v. *Pelican,* 232 U. S. 442; *United States* v. *Ramsey,* 271 U. S. 467; *United States* v. *Chavez, supra.* Cohen, Handbook of Federal Indian Law, pp. 364–365, 146–148. This has not always been as clear as it is now. In 1896, this Court, following *United States* v. *McBratney, supra,* held, in *Draper* v. *United States, supra,* that the state courts, and not the federal courts, had jurisdiction over a murder on an Indian reserva-

The conviction cannot be sustained under the federal definitions of rape or assault with intent to rape, because the federal crime of rape carries with it the requirement of proof of the use of force by the offender and of an absence of consent by the victim. *Oliver* v. *United States,* 230 F. 971. Neither of these elements was charged or proved here. The federal crime of having carnal knowledge of a girl requires proof that she was under 16 years of age at the time of the offense, whereas here the indictment charged merely that she was under 18 and the proof

tion in the State of Montana, by one person not an Indian of another not an Indian. The effect of this went so far that, in 1902, the Committee on the Judiciary of the House of Representatives reported that, "As the law now stands . . . offenses committed by half-breeds or white persons, whether upon an Indian or other person, are not cognizable by the Federal courts and generally go unpunished. This state of the law is causing serious conditions of disorder within these Indian reservations." H. R. Rep. No. 2704, 57th Cong., 1st Sess., p. 1. After a cession of jurisdiction by the State and after being memorialized to do so by the legislature of South Dakota, Congress, in 1903, granted jurisdiction specifically to the courts of the United States for the District of South Dakota over actions charging any person with certain major crimes committed within any Indian reservation in that State. 32 Stat. 793; 35 Stat. 1151; 36 Stat. 1167; 18 U. S. C. § 549. This Court, however, in 1913, in *Donnelly* v. *United States, supra,* at pp. 271–272, said: "Upon full consideration we are satisfied that offenses committed by or against Indians are not within the principle of the *McBratney* and *Draper Cases.* This was in effect held, as to crimes committed *by* the Indians, in the *Kagama Case,* 118 U. S. 375, 383, . . . This same reason applies—perhaps *a fortiori*—with respect to crimes committed by white men against the persons or property of the Indian tribes while occupying reservations set apart for the very purpose of segregating them from the whites and others not of Indian blood." We find no material special legislation on this subject affecting Arizona except its Enabling Act. 36 Stat. 568, 572. That Act contains provisions similar to those applicable to Montana, considered in *Draper* v. *United States, supra,* and to those applicable to New Mexico, considered in *United States* v. *Chavez, supra.*

showed that she was between 16 and 18. While the indictment did not state whether or not the petitioner was an Indian or whether or not he was married, the undisputed evidence showed that he was a married white man.

However, the offense charged comes within the statutory definition of "rape" in § 43–4901 of the Arizona Code.[11] That section expands the crime of "statutory rape" so as to include sexual intercourse with a girl under 18 instead of merely with a girl under 16. Accordingly,

---

[11] Arizona's definition of rape and the punishment that Arizona prescribes for its commission differ from those relating either to rape or carnal knowledge under the Federal Criminal Code. These differences well illustrate the confusing variations from the definition of a federal crime and from provisions for its punishment which would have to be considered if indictments were permitted under the Assimilative Crimes Act for every act committed within a federal enclave and which might come within a State's enlargement of the federal definition of the same offense. Section 43–4901 of the Arizona Code of 1939 provides:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under any of the following circumstances:

"Where the female is under the age of eighteen [18] years;

"Where she is incapable, through lunacy or any other unsoundness of mind, whether temporary or permanent, of giving legal consent;

"Where she resists, but her resistance is overcome by force or violence;

"Where she is prevented from resisting by threats of immediate and great bodily harm, accompanied by apparent power of execution, or by any intoxicating, narcotic, or anaesthetic substance, administered by or with the privity of the accused;

"Where she is at the time unconscious of the nature of the act, and this is known to the accused;

"Where she submits, under a belief that the person committing the act is her husband, and this belief is induced by any artifice, pretense or concealment practiced by the accused, with intent to induce such belief . . .

"Rape is punishable by imprisonment in the state prison for life or for any term of years not less than five [5]."

the question here is whether or not the Assimilative Crimes Act makes this section applicable to Indian reservations in Arizona. The question extends not only to the definition of the offense but also to the punishment prescribed. The Arizona Code fixes the punishment for its violation in those instances where violations would not come within § 279 of the Federal Criminal Code. Under those circumstances, on an Indian reservation in Arizona, the statutory punishment, fixed by § 279 of the Federal Criminal Code, for a man, not an Indian, who had carnal knowledge of an Indian girl under 16, would be imprisonment for not more than 15 years for the first offense and not more than 30 years for a subsequent offense, with no minimum sentence specified. On the same facts, except that the girl be between 16 and 18, the punishment, fixed by the Arizona Code, would be imprisonment for life or for any term not less than five years. This would impose a more stringent range of punishment, including the minimum sentence of five years imposed in this case, upon what Congress in its Criminal Code evidently had treated as a lesser offense.

We hold that the Assimilative Crimes Act does not make the Arizona statute applicable in the present case because (1) the precise acts upon which the conviction depends have been made penal by the laws of Congress defining adultery [12] and (2) the offense known to Arizona as that of "statutory rape" [13] has been defined and prohibited by the Federal Criminal Code,[14] and is not to be redefined and enlarged by application to it of the Assimilative Crimes Act. The fact that the definition of this offense as enacted by Congress results in a narrower scope for the offense than that given to it by the State, does not mean that the con-

---

[12] See note 7, *supra.*

[13] See note 11, *supra,* and for the use of this designation of the crime in Arizona see *Sage* v. *State,* 22 Ariz. 151, 195 P. 533, and *Taylor* v. *Arizona,* 55 Ariz. 29, 97 P. 2d 927.

[14] See note 6, *supra.*

gressional definition must give way to the State definition. This is especially clear in the present case because the specified acts which would come within the additional scope given to the offense by the State through its postponement of the age of consent of the victim from 16 to 18 years of age, are completely covered by the federal crimes of adultery or fornication.[15] The interesting legislative history of the Assimilative Crimes Act [16] discloses nothing to indicate that, after Congress has once defined a penal offense, it has authorized such definition to be enlarged by the application to it of a State's definition of it. It has not even been suggested that a conflicting State definition could give a narrower scope to the offense than that given to it by Congress. We believe that, similarly, a conflicting State definition does not enlarge the scope of the offense defined by Congress. The Assimilative Crimes Act has a natural place to fill through its supplementation of the Federal Criminal Code, without giving it the added effect of modifying or repealing existing provisions of the Federal Code.

Where offenses have been specifically defined by Congress and the public has been guided by such definitions for many years, it is not natural for Congress by general legislation to amend such definitions or the punishments prescribed for such offenses, without making clear its intent to do so.[17] On the other hand, it is natural for Con-

---

[15] See notes 7 and 8, *supra.*

[16] See *United States* v. *Press Publishing Co.,* 219 U. S. 1, 10–13, and *Johnson* v. *Yellow Cab Co.,* 321 U. S. 383, 398–401.

[17] In *Ex parte Crow Dog,* 109 U. S. 556, 570–571, Mr. Justice Matthews, writing for the court, said:

"The language of the exception is special and express; the words relied on as a repeal are general and inconclusive. The rule is, *generalia specialibus non derogant.* 'The general principle to be applied,' said Bovill, C. J., in *Thorpe* v. *Adams,* L. R. 6 C. P. 135, 'to the construction of acts of Parliament is that a general act is not to be construed

gress from time to time, through renewals of the Assimilative Crimes Act, to use local statutes to fill in gaps in the Federal Criminal Code where no action of Congress has been taken to define the missing offenses.

That the attorneys for the Government have recognized the force of some of these considerations is apparent from the following statement at the close of their brief:

> "Congress, of course, was free to fix policy for areas of federal jurisdiction even though it might conflict with local policy, and we think it has done so in respect of the instant situation. These considerations, we think, outweigh the considerations in support of the judgment of the court below."

The first Federal Crimes Act, approved April 30, 1790, 1 Stat. 112, dealt primarily with subjects over which the Constitution had expressly given jurisdiction to the Federal Government. For example, it dealt with treason, crimes upon the high seas and counterfeiting of securities of the United States. In so far as it related to federal enclaves, it recognized and provided punishment for the offenses of "wilful murder" and manslaughter if committed "within any fort, arsenal, dock-yard, magazine, or

---

to repeal a previous particular act, unless there is some express reference to the previous legislation on the subject, or unless there is a necessary inconsistency in the two acts standing together.' 'And the reason is,' said Wood, V. C., in *Fitzgerald* v. *Champenys*, 30 L. J. N. S. Eq. 782; 2 Johns. and Hem. 31–54, 'that the legislature having had its attention directed to a special subject, and having observed all the circumstances of the case and provided for them, does not intend by a general enactment afterwards to derogate from its own act when it makes no special mention of its intention so to do.' "

In *Franklin* v. *United States*, 216 U. S. 559, 568, in referring to the Assimilative Crimes Act, it was said, "by this act Congress adopted for the government of the designated places, . . . the criminal laws then existing in the several States within which such places were situated, *in so far as said laws were not displaced by specific laws enacted by Congress.*" (Italics supplied.)

in any other place or district of country, under the sole and exclusive jurisdiction of the United States . . ." § 3, 1 Stat. 113. . It contained nothing corresponding directly to the Assimilative Crimes Act.[18]

On February 10, 1823, James Buchanan, then serving his first term in the House of Representatives, clearly stated the need for the recognition of additional federal crimes. He secured the adoption of a Resolution "That the Committee on the Judiciary be instructed to inquire whether there be any, and, if any, what, crimes not now punishable by law, to which punishments ought to be affixed." Annals of Congress, 17th Cong., 2d Sess. (1822–1823) 929.[19]

---

[18] Its nearest approach to an Assimilative Crimes Act was in its definition of piracies. It provided in § 8 that "if any person or persons shall commit upon the high seas, or in any river, haven, basin or bay, out of the jurisdiction of any particular state, murder or robbery, or any other offence which if-committed within the body of a county, would by the laws of the United States be punishable with death; . . . every such offender shall be deemed, taken and adjudged to be a pirate and felon, and being thereof convicted, shall suffer death; . . ." 1 Stat. 113. This corresponds to the plan in certain English statutes (e. g. 28 Henry VIII, c. 15 (1536); 39 George III, c. 37 (1799)) for supplementing their Maritime Law with "other offenses" known to the common law. There was no attempt to enlarge the definitions of existing crimes under the Maritime Law by cross reference to broader definitions under the common law. When the Assimilative Crimes Act later appeared in the Federal Criminal Code, it followed this general form of statement.

[19] "In offering this resolution, Mr. B. said, it had been decided that the courts of the United States had no power to punish any act, no matter how criminal in its nature, unless Congress have declared it to be a crime, and annexed a punishment to its perpetration. Offences at the common law, not declared such by acts of Congress, are therefore not within the range of the jurisdiction of the Federal courts. Congress have annexed punishments but to a very few crimes, and those all of an aggravated nature. The consequence is, that a great variety of actions, to which a high degree of moral guilt is attached,

In the second session of the next Congress,[20] Daniel Webster, Chairman of the Committee of the Judiciary of the House of Representatives, sponsored the bill which became the Federal Crimes Act of March 3, 1825. After extended debate,[21] Congress expanded the list of enumerated federal crimes. It also added the § 3 which became the basis of the Assimilative Crimes Act of today:

> ". . . if any offence shall be committed in any of the places aforesaid,[22] the punishment of which offence is not specially provided for by any law of the United States, such offence shall, upon a conviction in any court of the United States having cognisance thereof, be liable to, and receive the same punishment as the laws of the state in which such fort, dock-yard, navy-yard, arsenal, armory, or magazine, or other place, ceded as aforesaid, is situated, provide for the like offence when committed within the body of any county of such state." 4 Stat. 115.

and which are punished as crimes at the common law, and by every State in the Union, may be committed with impunity on the high seas, and in any place where Congress has exclusive jurisdiction. To afford an example: An assault and battery, with intent to commit murder, may be perpetrated, either on the high seas, or in a fort, magazine, arsenal, or dockyard, belonging to the United States, and there exists no law to punish such an offence.

"This is a palpable defect in our system, which requires a remedy; and it is astonishing that none has ever yet been supplied." Annals of Congress, 17th Cong., 2d Sess. (1822–1823) 929.

[20] In its first session, a bill for some assimilation of the criminal laws of the States passed the Senate, but apparently was not acted upon by the House. Annals of Congress, 18th Cong., 1st Sess. (1823–1824) 528, 592, 762. See also, 1 Gales & Seaton, Register of Debates in Congress, 338.

[21] 1 Gales & Seaton, Register of Debates in Congress, 152–158, 335–341, 348–355, 363–365.

[22] ". . . any fort, dock-yard, navy-yard, arsenal, armory, or magazine, the site whereof is ceded to, and under the jurisdiction of, the United States, or on the site of any lighthouse, or other needful building belonging to the United States . . ." 4 Stat. 115, § 1.

This was amended in 1866, 14 Stat. 13, and in 1874 it was incorporated in the Revised Statutes as § 5391 in substantially its then existing form. For many years it thus referred to an "offense" which is not prohibited or the punishment of which "is not specially provided for, by any law of the United States . . ." [23] A similar provision was enacted in 1898 in 30 Stat. 717. In 1909, however, in codifying the Federal Criminal Code, this section was slightly changed when it was incorporated in that Code as § 289 in substantially its present form. The word "offense" was changed so as to avoid the use of it as referring to an action which had not been prohibited and, therefore, technically could not be an "offense." Possibly this change of the old phrase into the phrase "any act or thing which is not made penal by any laws of Congress" led to the present attempt to interpret it in a specific sense as referring to individual acts of the parties rather than in a generic sense referring to acts of a general type or kind. The new words, in the light of the Congressional Committee's explanation of them, [24] cannot, however, be

---

[23] "If any offense be committed in any place which has been or may hereafter be, ceded to and under the jurisdiction of the United States, which offense is not prohibited, or the punishment thereof is not specifically provided for, by any law of the United States, such offense shall be liable to, and receive, the same punishment as the laws of the State in which such place is situated, now in force, provide for the like offense when committed within the jurisdiction of such State; and no subsequent repeal of any such State law shall affect any prosecution for such offense in any court of the United States." Rev. Stat. § 5391.

[24] The Committee's statement as to the new section was:

"Section 5391, Revised Statutes, provides that if any 'offense' be committed, etc., which 'offense' is not prohibited or punished by any law of Congress, such 'offense' shall receive the same punishment as is attached thereto by the law of the State within which the place upon which it is committed is situated.

"An act which is not forbidden by law and to the commission of which no penalty is attached in no legal sense can be denominated an·

regarded as changing the scope of the Act so substantially as to make it amend and enlarge the definition of an existing federal offense as well as to cover the case where an "offense" had not been prohibited. To do so would be contrary to the expressed purpose of the Committee to continue, rather than to change, its original meaning. In the instant case not only has the generic act been covered by the definition of having carnal knowledge, but the specific acts have been made "penal" by the definition of adultery. The subsequent amendments [25] have been made merely to advance the dates as of which the assimilated local statutes must have been in force. The last amendment, in 1940, followed an explanation of the bill in identical letters from the Attorney General to the Speaker of the House of Representatives and to the Chairman of the Senate Committee on the Judiciary. These letters adopted the view that the Act was to cover crimes on which Congress had not legislated and did not suggest that the Act was to enlarge or otherwise amend definitions of crimes already contained in the Federal Code.[26]

---

'offense.' The section has therefore been rewritten so as to correctly express what Congress intended when it enacted the section referred to." H. R. Rep. No. 2, 60th Cong., 1st Sess., p. 25. See also, notes on the decision in the instant case below. 59 Harv. L. Rev. 131; 45 Col. L. Rev. 972; and see *United States* v. *Franklin,* 174 F. 163, writ of error dismissed, 216 U. S. 559, 568.

[25] 48 Stat. 152; 49 Stat. 394; 54 Stat. 234.

[26] "Certain crimes committed on Federal reservations are expressly defined in the Criminal Code. This is true of grave offenses, such as murder, manslaughter, rape, assault, mayhem, robbery, arson, and larceny (U. S. C., title 18, secs. 451–467). The Congress has not, however, legislated as to other crimes committed on Federal reservations, but has provided generally that as to them, the law of the State within which the reservation is situated, shall be applicable (Criminal Code, sec. 289; U. S. C., title 18, sec. 468)." Quoted in H. Rep. No. 1584, 76th Cong., 3d Sess., p. 2 and S. Rep. No. 1699, 76th Cong., 3d Sess., p. 1.

As to the particular offense involved in this case, the legislative history shows an increasing purpose by Congress to cover rape and all related offenses fully with penal legislation. In the Federal Crimes Act óf 1825, 4 Stat. 115, rape was prohibited and made punishable only within certain areas under the admiralty and maritime jurisdiction of the United States. In the same Act, the assimilative crimes section was applied to federal enclaves.[27] It thus provided the original federal prohibition of such conduct in those areas. If Congress had been satisfied to continue to apply local law to this and related offenses it would have been simple for it to have left the offense to the Assimilative Crimes Act. A contrary intent of Congress has been made obvious. Congress repeatedly has increased its list of specific prohibitions of related offenses and has enlarged the areas within which those prohibitions are applicable. It has covered the field with uniform federal legislation affecting areas within the jurisdiction of Congress.[28]

When Congress thus enacted the statute as to carnal knowledge in 1889 it gave special attention to the age of consent. The House of Representatives fixed the age

---

[27] See note 22, *supra.*

[28] Rape: (1825) 4 Stat. 115, applied to the high seas but not to federal enclaves; (1874) Rev. Stat. § 5345 applied to federal enclaves; (1909) 35 Stat. 1143. Assault with intent to commit rape: (1825) 4 Stat. 121, on high seas but not within federal enclaves: (1874) Rev. Stat. § 5346; (1909) 35 Stat. 1143. Carnal knowledge: (1889) 25 Stat. 658, age of consent fixed at 16; (1909) 35 Stat. 1143. Adultery: (1887) 24 Stat. 635, in connection with the amendment of bigamy statutes; (1909) 35 Stat. 1149. Fornication: (1887) 24 Stat. 636, in connection with revision of bigamy statutes; (1909) 35 Stat. 1149. See also, Criminal Code, § 312, obscene literature (1873); § 313, polygamy (1862); § 314, unlawful cohabitation (1882); § 317, incest (1887). 18 U. S. C. §§ 512–517.

at 14 and the Senate changed it to 16. 20 Cong. Rec. 997.[29]

For these reasons, we believe that the Assimilative Crimes Act does not make the Arizona Code applicable to the facts of this case. The judgment of the Court of Appeals accordingly is

*Reversed.*

MR. JUSTICE RUTLEDGE concurs in the result.

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

---

[29] Senator Faulkner, in charge of the bill, said: ". . . the age was fixed by the committee after considerable discussion and an examination of the laws of the several States. Some of the States have changed their laws. A number of the States have fixed the age of sixteen. Some of them have fixed as high as eighteen. Mississippi, Colorado, and Alabama have fixed as high as eighteen." 19 Cong. Rec. 6501.