[No. 34126. *En Banc.* May 5, 1960.]

*In the Matter of the Application for a Writ of Habeas Corpus of* CALVIN ARQUETTE, *Petitioner,* v. MERLE E. SCHNECKLOTH, *as Superintendent of the State Penitentiary, Respondent.*[1]

[1]Reported in 351 P. (2d) 921.

*The Attorney General* and *Michael R. Alfieri, Assistant,* for respondent.

WEAVER, C. J.—Calvin Arquette was charged with the intentional taking of an automobile without the permission of the owner. RCW 9.54.020. He waived counsel, pleaded guilty, and was sentenced to the penitentiary for a period of not more than ten years. No challenge was then made to the jurisdiction of the superior court.

Calvin Arquette filed his petition for a writ of *habeas corpus* in this court and alleged that he

". . . is an unemancipated Indian of the United States and a member of the Yakima Tribe of the State of Washington . . ."

and that

". . . the purported crime as charged against your petitioner (an Indian) took place in Indian Country as defined in U. S. C., Title 18 (1952 ed.) See 1152—Laws Governing—U. S. C., Title 18 (1952 ed.) See 1151 'Indian Country Defined'; . . ."

The return and answer to the petition raised issues of fact that could not be "determined from the face of the record," so this court referred the matter to the trial court. Rule on Appeal 56 (5), RCW, Vol. 0.

Subsequently, the superior court of Yakima county found

". . . that at the time of the commission of the offense, Calvin Arquette was an enrolled member of the Yakima Indian Tribe; Second, that the crime charged was committed within the city limits of the City of Toppenish and within the geographic boundaries of the Yakima Indian Reservation; further, that the offense was committed within 'Indian Country', as defined by Title 18, U. S. C. A., Section 1151, as amended."

This court recently held, in circumstances parallel to those of the instant case, that a state court cannot acquire jurisdiction of an Indian charged with the commission of one of the ten major crimes in Indian country by estoppel,

stipulation, or waiver by failure to question jurisdiction at the time of arraignment, plea, or sentence; and that jurisdiction can be questioned for the first time by writ of *habeas corpus*. *In re Wesley v. Schneckloth*, 55 Wn. (2d) 90, 346 P. (2d) 658 (1959); *In re Roberts v. Schneckloth*, 55 Wn. (2d) 105, 346 P. (2d) 668 (1959); *In re Monroe*, 55 Wn. (2d) 107, 346 P. (2d) 667 (1959); *In re Charley v. Rhay*, 55 Wn. (2d) 585, 348 P. (2d) 977 (1960).

Petitioner seeks release from the penitentiary and urges that the superior court did not have jurisdiction, because the offense with which he was charged was one of the Ten Major Crimes enumerated in 18 U. S. C. 1952 ed. § 1153.

The Ten Major Crimes Act (18 U. S. C. 1952 ed. § 1153) provides:

"Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, . . . larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States."

■ "Intentionally taking an automobile without permission" of the owner, with which petitioner was charged (RCW 9.54.020), is not the equivalent of larceny under the Ten Major Crimes Act (18 U. S. C. 1952 ed. § 1153). Larceny involves intent to permanently deprive the owner of his property. Under our statute, taking an automobile without the permission of the owner is a lesser crime than larceny. *State v. Phillips,* 179 Wash. 607, 38 P. (2d) 372 (1934); *State v. Daniels,* 119 Wash. 557, 205 Pac. 1054 (1922).

We conclude, therefore, that petitioner's offense is not one of the ten major crimes, under the exclusive jurisdiction of the federal courts.

■ It appears, nevertheless, that the federal courts have jurisdiction over the petitioner. 18 U. S. C. 1952 ed. § 1152 makes 18 U. S. C. 1952 ed. § 13 (the "Assimilative Crimes Act") operative in Indian country; and that act, in turn, makes a violation of RCW 9.54.020 a federal offense.

18 U. S. C. 1952 ed. § 1152 provides:

"Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

"This section shall not extend to offenses committed by one Indian against the person or property of another Indian, . . ."

18 U. S. C. 1952 ed. § 13 (the Assimilative Crimes Act) provides:

"Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment."

In *Franklin v. United States*, 216 U. S. 559, 568, 54 L. Ed. 615, 30 S. Ct. 434 (1910), the court said:

" . . . by this act [Assimilative Crimes Act] Congress adopted for the government of the designated places, . . . the criminal laws then existing in the several States within which such places were situated, in so far as said laws were not displaced by specific laws enacted by Congress."

(See *In re White v. Schneckloth, ante* p. 173, 351 P. (2d) 919 (1960), wherein a specific law "enacted by Congress" is involved.)

The Assimilative Crimes Act applies to Indian country. *Williams v. United States*, 327 U. S. 711, 90 L. Ed. 962, 66 S. Ct. 778 (1946). By reason of this, an enrolled Indian was properly prosecuted in federal court for an act committed in Indian country, even though the act was made criminal by state statute. *United States v. Sosseur*, 181 F. (2d) 873 (7th Cir. 1950).

In *In re Denetclaw*, 83 Ariz. 299, 303, 320 P. (2d) 697 (1958), the petitioner, an enrolled Indian, pleaded guilty in justice court to the charges of driving under the influence

of intoxicating liquor and of reckless driving within the exterior boundaries of the Navaho Indian Reservation. The supreme court of Arizona upheld the trial court's release of the petitioner on a writ of *habeas corpus,* saying:

"By enactment of the Assimilative Crimes Act (18 U. S. C. A. § 13th, the Congress expressly adopted the criminal laws of the States for areas within federal jurisdiction. For an excellent dissertation of this Act see United States v. Sosseur, 7 Cir., 181 F. 2d 873. *The courts have repeatedly held that federal jurisdiction over offenses, either felonies or misdemeanors, committed by an Indian in Indian country is exclusive and not concurrent with state jurisdiction.* United States v. Kagama, 118 U. S. 375, 6 S. Ct. 1109, 30 L. Ed. 228; In re Blackbird, D. C. 109 F. 139; United States ex rel. Lynn v. Hamilton, D. C., 233 F. 685; State v. Jackson, 1944, 218 Minn. 429, 16 N. W. 2d 752. Cf. Williams v. United States, 1946 Ariz., 327 U. S. 711, 66 S. Ct. 778, 90 L. Ed. 962." (Italics ours.)

In *State v. Begay,* 63 N. M. 409, 320 P. (2d) 1017 (1958), and *State ex rel. Bokas v. District Court,* 128 Mont. 37, 41, 270 P. (2d) 396 (1954), the courts reached the same conclusion. The Montana court said:

"We hold that, under the federal laws, the Indian ward, while residing on and being on and within the exterior boundaries of his Indian reservation, is under *the exclusive jurisdiction of his guardian, our Federal Government, in regard to all crimes recognized and made applicable to the Indian country by Congress.*"

Accord: *In re Fredenberg,* 65 F. Supp. 4 (D. C. Wisc. 1946) (Operating unregistered vehicle); *In re Konaha,* 43 F. Supp. 747 (D. C. Wisc. 1942) (Negligent homicide resulting from drunken driving); *Donnelly v. United States,* 228 U. S. 243, 271-72, 57 L. Ed. 820, 33 S. Ct. 449 (1913); Federal Indian Law, 501, 502, 504 (U. S. Dept. Int. 1958); Cohen, Handbook of Federal Indian Law, 117, 120 (1945).

In *In re Wesley v. Schneckloth,* 55 Wn. (2d) 90, 97, 346 P. (2d) 658 (1959), this court said:

"We are aware of the difficulty our conclusions cause in the field of law enforcement . . . and of the related problems they raise . . . but the solution in this state

lies in corrective legislation . . ., not in unauthorized assumption of jurisdiction by our state court."

In 1953, Congress enacted Public Law 280, 83rd Congress, 1st Session (67 Stat. 588, 590) that consented to the assumption of jurisdiction over Indians by the states. The pertinent section provides:

"Sec. 6. Notwithstanding the provisions of any Enabling Act for the admission of a State, *the consent of the United States is hereby given to the people of any State to amend,* where necessary, *their* State constitution or *existing statutes,* as the case may be, *to remove any legal impediment to the assumption of civil and criminal jurisdiction* in accordance with the provisions of this Act: . . ." (Italics ours.)

Pursuant thereto, the Washington legislature adopted Laws of 1957, chapter 240, p. 941 (RCW 37.12). In *State v. Paul,* 53 Wn. (2d) 789, 337 P. (2d) 33, appeal dismissed 361 U. S. 898 (1959), this court held chapter 240, *supra,* constitutional.

The statute does not vest state courts with civil and criminal jurisdiction over Indians on Indian reservations; it only gives the tribal council, or other governing body, the right to petition the governor for the issuance of a proclamation placing the people and lands of the tribe under civil and criminal jurisdiction of the state. In the case of the Colville, Spokane, and Yakima tribes, the resolution of the tribal council must be ratified by a two-thirds majority of the adult enrolled members of the tribe voting in a referendum called for that purpose. RCW 37.12.020. Little use has been made of the statute.[2]

Until the remaining tribes elect to place themselves under the operation of the statute (RCW 37.12), or the legislature unconditionally assumes jurisdiction, as authorized by the 1953 Congressional enactment, jurisdiction over crimes committed by Indians in Indian country will remain in the federal courts.

---

[2]At the date of this opinion, nine tribes (representing approximately 3,879 enrolled Indians) out of twenty-one tribes (representing approxi-

■ It follows, therefore, that the state court did not have jurisdiction to confine petitioner. The writ of *habeas corpus* shall issue, and respondent is directed to release petitioner.

It is so ordered.

MALLERY, DONWORTH, ROSELLINI, OTT, FOSTER, and HUNTER, JJ., concur.

HILL, J. (concurring specially)—My views on the basic issue of jurisdiction here presented may be found, if any one is interested, in my dissenting opinion in the case of *In re Wesley v. Schneckloth* (1959), 55 Wn. (2d) 90, 346 P. (2d) 658. I concur here because the opinion in that case is now the law.

FINLEY, J. (concurring)—I concur in the result for the reasons stated by Judge Hill.

---

mately 14,714 enrolled Indians) residing in the state of Washington have elected to come under the provisions of Laws of 1957, chapter 240. The names of the tribes and the effective dates of state jurisdiction are as follows:

| Tribe | Date of state jurisdiction |
| --- | --- |
| Skokomish | September 28, 1957 |
| Muckleshoot | October 25, 1957 |
| Quileute | December 2, 1957 |
| Chehalis | December 13, 1957 |
| Nisqually | January 1, 1958 |
| Tulalip | July 7, 1958 |
| Suquamish | July 14, 1958 |
| Quinault | July 14, 1958 |
| Squaxin Island | September 25, 1959 |

The effective dates of state jurisdiction are a matter of public record in the office of the governor. Population figures are from the Bureau of Indian Affairs, Portland, Oregon, as of June 1, 1957. *Census of Population: 1950, Vol. II, Characteristics of the Population, Part 47, Washington,* lists the Washington Indian population at 13,816.