** PART I **
THE ATTORNEY GENERAL HAS RECEIVED YOUR REQUEST FOR AN OPINION, WHICH ADDRESSES, IN EFFECT, THE FOLLOWING QUESTIONS:
 1. DOES A MUNICIPAL FIRE DEPARTMENT HAVE ANY RESPONSIBILITY TO RESPOND TO AND EXTINGUISH A FIRE AT ANY INDIAN OWNED AND OPERATED BUSINESSES LOCATED WITHIN THE CITY LIMITS OF A MUNICIPALITY?
 2. DOES THE STATE FIRE MARSHAL HAVE ANY LEGAL AUTHORITY TO INSPECT ANY INDIAN OWNED BUSINESS WITHIN THE STATE OF OKLAHOMA, OPEN TO THE PUBLIC?
 3. DOES THE STATE FIRE MARSHAL HAVE ANY AUTHORITY TO REQUIRE THAT ALL INDIAN OWNED BUSINESSES, SUCH AS A DAY CARE FACILITY, BE BUILT ACCORDING TO STATE ADOPTED BUILDING CODE REQUIREMENTS?
 4. DOES A STATE FIRE MARSHAL AGENT, COMMISSIONED AS A DEPUTY SPECIAL OFFICER BY THE UNITED STATES DEPARTMENT OF THE INTERIOR, BUREAU OF INDIAN AFFAIRS, HAVE ANY AUTHORITY TO INVESTIGATE FIRES INVOLVING INDIAN OWNED BUSINESSES, WITHIN A MUNICIPALITY OR ON INDIAN LAND AND ENFORCE STATE ADOPTED CODES ON INDIAN OWNED BUSINESSES WITH A MUNICIPALITY OR ON INDIAN OWNED LAND?
ATTORNEY GENERAL HENRY HAS DIRECTED ME TO RESPOND TO YOUR RECENT LETTER POSING THESE QUESTIONS. ALTHOUGH WE CANNOT ISSUE AN OFFICIAL ATTORNEY GENERAL'S OPINION ON THIS MATTER, I BELIEVE I CAN ASSIST YOU IN IDENTIFYING THE CONTROLLING LEGAL PRINCIPLES. THE VIEWS EXPRESSED IN THIS LETTER ARE, OF COURSE, THOSE OF THE UNDERSIGNED AND SHOULD NOT BE CONSTRUED AS REFLECTING THE OFFICIAL OPINION OF THE ATTORNEY GENERAL.
YOUR FIRST THREE QUESTIONS, AS THEY ARE WORDED NOW, CAN BE ADDRESSED JOINTLY. THE MERE FACT THAT A BUSINESS WITHIN A MUNICIPALITY MAY BE INDIAN OWNED OR OPERATED DOES NOT REMOVE IT FROM THE JURISDICTION OF THAT MUNICIPALITY OR THE STATE OF OKLAHOMA. THEREFOR, THE ANSWER TO ALL THREE OF YOUR FIRST THREE QUESTIONS IS, YES. IN FACT, TO DIFFERENTIATE WHETHER OR NOT SOMEONE RECEIVES FIRE PROTECTION TO WHICH THEY WOULD OTHERWISE BE ENTITLED, BASED UPON THEIR RACE, WOULD OF COURSE, BE IMPROPER AND ILLEGAL. THESE ANSWERS ASSUME, OF COURSE, THAT THE INDIAN CONTROLLED BUSINESSES ARE NOT IN INDIAN COUNTRY. IT IS MY UNDERSTANDING THAT THE MAJORITY OF INDIANS AND INDIAN CONTROLLED BUSINESSES ARE NOT IN INDIAN COUNTRY, AND SHOULD BE TREATED NO DIFFERENTLY THAN OTHER CITIZENS OR BUSINESSES.
ALTHOUGH YOU DID ACT SO SPECIFY, I WILL ADDRESS YOUR FIRST THREE QUESTIONS AS THEY APPLY TO INDIAN COUNTRY. AS STATED ABOVE, INDIAN OWNED OR OPERATED BUSINESSES OR RESIDENCES THAT ARE NOT ON INDIAN COUNTRY SHOULD BE TREATED ABSOLUTELY NO DIFFERENTLY THAN NONINDIAN OWNED OR OPERATED BUSINESSES OR RESIDENCES. (INDIAN COUNTRY)
I BELIEVE THAT THE IMPETUS FOR YOUR QUESTIONS STEMS FROM OUR RECENT ATTORNEY GENERAL OPINION NO. 90-032, AND I AM ENCLOSING A COPY OF THAT OPINION FOR YOUR INFORMATION. THE QUESTIONS POSED IN THAT OPINION ONLY DEAL WITH PROBLEMS THAT OCCUR IN INDIAN COUNTRY. INDIAN COUNTRY IS A FEDERAL CLASSIFICATION OF CERTAIN LANDS STILL OWNED OR CONTROLLED BY INDIVIDUAL INDIANS OR BY INDIAN TRIBES. THUS, YOUR FIRST THREE QUESTIONS WILL ALSO BE RESPONDED TO, AS THEY APPLY TO INDIAN COUNTRY.
PRIOR TO THE INDIAN CIVIL RIGHTS ACT OF 1968, THE STATE COULD HAVE ASSUMED JURISDICTION OVER ALL INDIAN COUNTRY MERELY BY LEGISLATIVE ACT. IN 1953, IT WAS SUGGESTED BY THE DEPARTMENT OF INTERIOR THAT OKLAHOMA CONSIDER ASSUMING SUCH JURISDICTION OVER INDIAN LANDS UNDER PUBLIC LAW 280. OKLAHOMA DECLINED TO DO SO, AND SINCE THE PASSAGE OF THE INDIAN CIVIL RIGHTS ACT, PERMISSION OF THE TRIBES IS NOW A NECESSARY PREREQUISITE TO THE STATE ASSUMING CRIMINAL JURISDICTION OVER INDIAN COUNTRY. UNITED STATES V. BURNETT, 777 F.2D 593 (10TH CIR. 1985) CERT. DEN. 476 U.S. 1106,106 S.CT. 1952, 90 L.ED.2D 361 (1986). NO OKLAHOMA TRIBES HAVE GRANTED SUCH PERMISSION TO THE STATE.
INDIAN COUNTRY IS DEFINED IN 18 U.S.C.A. 1151 (1982), AS:
 "(A) ALL LAND WITHIN THE LIMITS OF ANY INDIAN RESERVATION UNDER THE JURISDICTION OF THE UNITED STATES GOVERNMENT, NOTWITHSTANDING THE ISSUANCE OF ANY PATENT, AND, INCLUDING RIGHT-OF-WAY RUNNING THROUGH THE RESERVATION,
 (B) ALL DEPENDENT INDIAN COMMUNITIES WITHIN THE BORDERS OF THE UNITED STATES WHETHER WITHIN THE ORIGINAL OR SUBSEQUENTLY ACQUIRED TERRITORY THEREOF, AND WHETHER WITHIN OR WITHOUT THE LIMITS OF A STATE, AND
 (C) ALL INDIAN ALLOTMENTS, THE INDIAN TITLES TO WHICH HAVE NOT BEEN EXTINGUISHED, INCLUDING RIGHTS-OF-WAY RUNNING THROUGH THE SAME."
OVER EACH TRACT OF LAND WHICH FALLS INTO THE LEGAL CLASSIFICATION OF INDIAN COUNTRY UNDER 18 U.S.C.A. 1151
(1982) THREE SEPARATE SOVEREIGNS SHARE CRIMINAL JURISDICTION OVER THE AREA. THOSE SOVEREIGNS ARE THE UNITED STATES OF AMERICA, THE STATE OF OKLAHOMA, AND THE TRIBE.
IT MUST BE EMPHASIZED THAT STATE COURTS RETAIN JURISDICTION, IN INDIAN COUNTRY, OVER CRIMES COMMITTED BY A NON-INDIAN AGAINST THE PERSON OR PROPERTY OF A NON-INDIAN. WILLIAMS V. UNITED STATES, 327 U.S. 711 (1946); DRAPER V. UNITED STATES,164 U.S. 240 (1896); UNITED STATES V. MCCRATNEY,104 U.S. 621 (1882). THEREFORE, INDIAN COUNTRY SHOULD NOT BE TREATED BY STATE LAW ENFORCEMENT OFFICERS AS A NO-MAN'S LAND, OVER WHICH THEY HAVE ABSOLUTELY NO AUTHORITY.
ABSENT AGREEMENTS BETWEEN THE THREE SOVEREIGNS, A LAW ENFORCEMENT OFFICER OF ONE SOVEREIGN MAY NOT ENFORCE THE LAW OF ONE OF THE OTHER TWO SOVEREIGNS IN INDIAN COUNTRY. THIS ISSUE RESURFACED RECENTLY IN THE CASE OF ROSS V. NEFF, 905 F.2D 1349 (10TH CIR. 1990). ROSS HELD THAT THE STATE OF OKLAHOMA, ACTING THROUGH THE ADAIR COUNTY SHERIFF, HAD ABSOLUTELY NO JURISDICTION TO ARREST A CHEROKEE MAN FOR WHAT WOULD HAVE BEEN A STATE OFFENSE HAD IT NOT OCCURRED ON CHEROKEE TRUST LAND. HAD THE ADAIR COUNTY SHERIFF BEEN OPERATING UNDER A FEDERAL OR CHEROKEE CROSS-DEPUTIZATION AGREEMENT, HE COULD HAVE LEGALLY MADE THE ARREST, AND THEN TURNED THE DEFENDANT OVER TO THE APPROPRIATE SOVEREIGN FOR PROSECUTION.
THE STATE'S POWER OVER INDIAN ACTIVITIES IN INDIAN COUNTRY IS LIMITED, BUT IT STILL EXISTS. FOR EXAMPLE, IN THE RECENT U.S. SUPREME COURT CASE OF CITIZEN BAND OF POTAWATOMI V. OKLAHOMA TAX COMMISSION, 498 U.S,., 112 L.ED.2D 1112, 111 S.CT. (FEB. 26, 1991) THE SUPREME COURT REEMPHASIZED THE NOTION OF TRIBAL SOVEREIGNTY, BUT HELD THAT THE STATE COULD LEGALLY TAX THE SALE OF CIGARETTES TO NON-INDIANS FROM A SMOKESHOP THAT WAS SITUATED IN INDIAN COUNTRY. THE SUPREME COURT LEFT OPEN THE QUESTION OF HOW THE STATE WAS TO ENFORCE THE TAXATION OF SALES TO NON-INDIANS.
YOUR FIRST QUESTION, AS REWORDED, ASKS IF A MUNICIPAL FIRE DEPARTMENT HAS A RESPONSIBILITY TO RESPOND TO AND EXTINGUISH A FIRE AT AN INDIAN OWNED AND OPERATED BUSINESS, SITUATED ON INDIAN COUNTRY, BUT WITHIN THE LIMITS OF THAT MUNICIPALITY. THE ISSUE OF WHETHER A MUNICIPAL FIRE DEPARTMENT HAS A RESPONSIBILITY TO RESPOND TO ANY FIRE WITHIN, ITS LIMITS WILL NOT BE DISCUSSED HERE. I WILL ASSUME FOR THE PURPOSES OF ARGUMENT THAT THERE IS A DUTY TO RESPOND TO EMERGENCIES OF RESIDENTS WITHIN THE MUNICIPALITY, PARTICULARLY IF THOSE RESIDENTS PAY FOR THE SERVICES.
IN HIS TREATISE ON INDIAN LAW, COHEN STATES:
 "ONE EXAMPLE OF LIMITED STATE COURT JURISDICTION OVER INDIANS IN INDIAN COUNTRY IS WHERE INDIANS EXERCISE RIGHTS AS STATE CITIZENS OR RESIDENTS."
AND, AT THE FOOTNOTE TO THE ABOVE PASSAGE:
 "RESERVATION INDIANS ARE RESIDENTS AND CITIZENS OF THE STATE AND ENTITLED TO RIGHTS AS SUCH EXCEPT WHERE THE EXERCISE OF SUCH RIGHTS WOULD INTERFERE WITH TRIBAL SELF-GOVERNMENT."
 F. COHEN, HANDBOOK OF FEDERAL INDIAN LAW 350 (1982). INDIANS LIVING IN INDIAN COUNTRY WITHIN THE BOUNDS OF A MUNICIPALITY CAN LEGITIMATELY EXPECT TO RECEIVE THE SAME SERVICES AND PROTECTIONS AS PERSONS WHO DC NOT RESIDE IN INDIAN COUNTRY, UNLESS THE PROVISION OF SUCH SERVICES BY THE MUNICIPALITY INTERFERES WITH THE RIGHTS OF THE TRIBES TO GOVERN THEMSELVES. SEE BOARD OF EQUALIZATION V. ALASKA NATIVE BROTHERHOOD, 666 P.2D 1015 (ALASKA 1983); SANGRE DE CRISTO DEVELOPMENT V. SANTA FE, 503 P.2D 323, 330 (N.M. 1972); WILLIAMS V. LEE, 358 U.S. 217, 79 S.CT. 269, 3 L.ED.2D 251 (1959).
WHETHER OR NOT THE PROVISION OF THOSE MUNICIPAL SERVICES WOULD INTERFERE WITH THE GOVERNMENTAL FUNCTIONS OF A TRIBE IS A COMPLEX QUESTION, WHICH WOULD INVOLVE TESTIMONY REGARDING TRIBAL OPERATIONS AND SERVICES, ETC. FOR EXAMPLE: DOES THE TRIBE PROVIDE FIRE AND/OR POLICE PROTECTION? HAVE THERE BEEN ANY AGREEMENTS BETWEEN THE TRIBE OR HOUSING AUTHORITY AND THE MUNICIPALITY REGARDING THE PROVISION OF SERVICES? DOES THE INDIVIDUAL INDIAN BUSINESSMAN OR RESIDENT RESIDING IN INDIAN COUNTRY PAY FOR MUNICIPAL SERVICES? HAVE MUNICIPAL SERVICES BEEN PROVIDED IN THE PAST? THUS, YOUR QUESTION CANNOT BE ANSWERED DEFINITIVELY BY THIS OFFICE.
I WILL, HOWEVER, ATTEMPT TO PROVIDE SOME GUIDANCE. IN MANY HOUSING AUTHORITY SITUATIONS (WHICH MAY OR MAY NOT QUALIFY AS INDIAN COUNTRY AS A DEPENDENT INDIAN COMMUNITY), ARRANGEMENTS ARE OFTEN MADE WITH THE HOST CITY TO PROVIDE WATER, FIRE AND POLICE PROTECTION, ETC. EAVES V. STATE, 795 P.2D 1060, 1061 (OKL.CR.1990).