## *In re* MAYFIELD, Petitioner.

ORIGINAL.

No. 15.    Original.  ·Submitted April 27, 1891. — Decided May 25, 1891.  ·

A member of the Cherokee Nation, committing adultery with an unmarried woman within the limits of its Territory, is amenable only to the courts of the Nation.

THIS was a petition for a·writ of *habeas corpus.*·  Petitioner averred that on the 19th day of October, 1890, he was indicted in the District Court of the United·States for. the Western District of Arkansas, and subsequently tried, convicted and

sentenced to the Detroit House of Correction for three years, for the crime of adultery in the Indian country. He further stated that he was "a Cherokee Indian by blood, and a recognized member of the Cherokee tribe of Indians, and resided at the time of his arrest for the crime aforesaid, in the said Cherokee Nation, where the said crime is alleged to have been committed; that he has resided in the said Cherokee Nation all his life; . . . that he verily believes that the said District Court had no jurisdiction of his person, he being a Cherokee Indian by blood and a resident of the Cherokee Nation and subject to the exclusive jurisdiction of the laws of said nation for the crime aforesaid." The indictment, a copy of which was annexed to the petition, charged that "John Mayfield, on the first day of January, A.D. 1890, at the Cherokee Nation, in the Indian country, within the Western District of Arkansas aforesaid, did commit the crime of adultery with one Mollie Phillips, a white woman, and not an Indian, and a single woman, by him, the said John Mayfield, having then and there carnal knowledge of the body of the said Mollie Phillips, the said John Mayfield being then and there a married man, and then and there having a lawful wife alive other than the said Mollie Phillips, and the said John Mayfield and the said Mollie Phillips not being then and there lawfully married to each other." Upon the hearing it was admitted by the district attorney who tried the case, which admission also had the approval of the District Judge, that upon the trial of the case "the evidence showed defendant to be one-fourth Indian by blood, and a citizen of the Cherokee tribe of Indians, and that he was lawfully married to a white woman by blood; and that Mollie Phillips, with whom the crime of adultery was charged to have been committed, was a white woman by blood; and that they both resided in the Illinois District of the Cherokee Nation, Indian Territory, at the time of the commission of the adultery of which Mayfield was convicted."

Mr. Van H. Manning and Mr. Duane E. Fox for the petitioner.

Mr. Assistant Attorney General Maury opposing.

The answer to the allegation of the want of sufficient cause for the petitioner's detention, is that he is held by virtue of a judgment of the District Court of the United States for the Western District of Arkansas.

If that court had jurisdiction of the crime of adultery of which the petitioner was convicted, it would seem that the return to the rule shows a complete justification for his detention.

By section 533 of the Revised Statutes, the jurisdiction of the District Court of the United States for the Western District of Arkansas was extended to "the country lying west of Missouri and Arkansas, known as the Indian Territory."

But the jurisdiction of this court over the Indian Territory was considerably abridged by the act of Congress of March 1, 1889, 25 Stat. 786, c. 333, § 17, annexing a part of that Territory to the Eastern District of Texas, and the act of January 6, 1883, 22 Stat. 400, c. 13, § 2, annexing another part to the District of Kansas.

It suffices to say that the residue of the Territory left to the jurisdiction of the District Court for the Western District of Arkansas embraces the venue of the crime as laid in the indictment.

The jurisdiction of the court established for the Indian Territory by the act of March 1, 1889, 25 Stat. 783, c. 333, does not interfere with the jurisdiction of the District Court, because the jurisdiction of the former is limited to offences "not punishable by death or by imprisonment at hard labor." See also section 33 of the act of May 2, 1890, 26 Stat. c. 182, pp. 96, 97.

It is true the offence of adultery is punishable "by imprisonment in the penitentiary not exceeding three years," but, inasmuch as a prisoner convicted of this offence may, under the provisions of chapter 9, title 70, of the Revised Statutes, be imprisoned in a penitentiary, where hard labor is exacted of all prisoners, it may be said with entire propriety that hard labor is a possible punishment for the crime of adultery. In *Ex parte Karstendick*, 93 U. S. 396, 399, the court used the following language on this subject: "Where the statute re-

quires imprisonment alone, the several provisions which have just been referred to place it within the power of the court, at its discretion, to order execution of its sentence at a place *where labor is exacted as part of the discipline and treatment of the institution or not, as it pleases.  Thus, a wider range of punishment is given, and the courts are left at liberty to graduate their sentences so as to meet the ever varying circumstances of the cases which come before them.*"  To the same effect is the case of *In re Mills*, 135 U. S. 263.

It cannot be doubted that the Cherokee Nation is within the western district of Arkansas.

It cannot be doubted that the offence of adultery was cognizable by the District Court of the said district.

The court having jurisdiction of the offence, it cannot be doubted that it must be conclusively taken to have had jurisdiction of the prisoner in the absence of any plea filed by him showing that the court had not, for some reason, jurisdiction over him, in accordance with the long established principle laid down in *Peacock v. Bell*, 1 Saund. 74, that "nothing shall be intended to be out of the jurisdiction of a Superior Court *but that which specially appears to be so ;* and, on the contrary, nothing shall be intended to be within the jurisdiction of an inferior court but that which is so expressly alleged."

In *Ex parte Watkins*, 3 Pet. 193, 207, Chief Justice Marshall said : "The cases are numerous which decide that the judgments of a court of record having general jurisdiction of the subject, although erroneous, are binding until reversed.  It is universally understood that the judgments of the courts of the United States, although their jurisdiction be not shown in the pleadings, are yet binding on all the world ; and that this apparent want of jurisdiction can avail the party only on a writ of error.  This acknowledged principle seems to us to settle the question now before the court.  The judgment of the Circuit Court in a criminal case is of itself evidence of its own legality, and requires for its support no inspection of the indictments on which it is founded.  The law trusts that court with the whole subject, and has not confided to this court the power of revising its decisions.  We cannot usurp that power

by the instrumentality of the writ of *habeas corpus*. The judgment informs us that the commitment is legal, and with that information it is our duty to be satisfied." This would seem to be decisive of the case at bar.

The jurisdiction of the court over the offence is clear. The petitioner appeared before the court, and no doubt pleaded to the indictment, although that does not appear directly, but is clearly inferable. Is it not clear, also, that it must be conclusively presumed that the court had jurisdiction over the person of the petitioner? *Galpin* v. *Page*, 18 Wall. 350, 366.

The District Court is a court of general criminal jurisdiction over that part of the Indian Territory where the offence was committed, and all presumptions are to be indulged for the purpose of supporting its judgments. *Rhode Island* v. *Massachusetts*, 12 Pet. 667, 718, 719.

MR. JUSTICE BROWN delivered the opinion of the court.

Petitioner was indicted for a violation of the third section of the act of March 3, 1887, 24 Stat. 635, c. 397, entitled "An act to amend an act entitled ' An act to amend section fifty-three hundred and fifty-two of the Revised Statutes of the United States, in reference to bigamy, and for other purposes,' approved March twenty-second, eighteen hundred and eighty-two." The section reads as follows : "That whoever commits adultery shall be punished by imprisonment in the penitentiary not exceeding three years; and when the act is committed between a married woman and a man who is unmarried, both parties to such act shall be deemed guilty of adultery; and when such act is committed between a married man and a woman who is unmarried, the man shall be deemed guilty of adultery." Rev. Stat. sec. 5352, to which this is an amendment, provided for the punishment of bigamy when committed " in a Territory, or other place over which the United States have exclusive jurisdiction." But the applicability of the act of March, 1887, to this case is apparent from sec. 2145, title 28, chapter 4, entitled " Government of Indian country," which reads as follows: "Except as to crimes the punishment of

which is expressly provided for in this Title, the general laws of the United States as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country."

It was held by this court in *United States* v. *Rogers*, 4 How. 567, that the Indian tribes residing within the territorial limits of the United States are subject to their authority, and where the country occupied by them is not within the limits of any one of the States, Congress may, by law, punish any offence committed there, no matter whether the offender be a white man or an Indian. The doctrine of this case was subsequently reaffirmed in the cases of the *Cherokee Tobacco*, 11 Wall. 616; *United States* v. *Kagama*, 118 U. S. 375, and *Ex parte Crow Dog*, 109 U. S. 556.

Did the case rest here there could be no doubt of the propriety of this conviction, but the very next section, 2146, as amended by the act of February 18, 1875, 18 Stat. 316, 318, c. 80, contains an important qualification to the general language of section 2145, as follows: "The preceding section shall not be construed to extend to [crimes committed by one Indian against the person or property of another Indian, nor to] any Indian committing any offence in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offences is or may be secured to the Indian tribes respectively." The crime charged in this case was evidently not one committed by one Indian against the person or property of another Indian, nor is there any evidence that Mayfield had been punished by the local law of the tribe; indeed, it is admitted that there is no Indian law punishing the crime of adultery. It only remains to consider whether, by treaty stipulation, exclusive jurisdiction over the offence has been secured to the Indian tribes.

On July 19, 1866, a treaty was concluded between the United States and the Cherokee Nation, 14 Stat. 799, the seventh and the thirteenth articles of which are pertinent to this case. The seventh article reads as follows: "The United

States court to be created in the Indian Territory; and until such court is created therein, the United States District Court, the nearest to the Cherokee Nation, shall have exclusive original jurisdiction of all causes civil and criminal, wherein an inhabitant of the district hereinbefore described shall be a party, and where an inhabitant outside of said district, in the Cherokee Nation, shall be the other party, as plaintiff or defendant in a civil cause, or shall be defendant or prosecutor in a criminal case, etc." The district of the Cherokee Nation referred to in this article, is described in the fourth article, and is known as the Canadian District. It is admitted that the District Court for the Western District of Arkansas is the nearest to the Cherokee Nation ; but in order to give it jurisdiction it is not only necessary, under this article, that an inhabitant of the district shall be a party, (in this case he is a party defendant,) but that the other party (in this case the prosecutor) shall be "an inhabitant outside of said district, in the Cherokee Nation." It does not appear, however, who was the prosecutor, or in fact that there was any one who could properly be so termed. The party with whom the adultery is claimed to have been committed is not an adverse, but a consenting party. Nor is there any evidence before us that the prosecution was instituted by the wife of Mayfield, if the crime of adultery could be considered as committed against her. *Bassett* v. *United States*, 137 U. S. 496, 506.

The thirteenth article of the same treaty provides as follows : " The Cherokees also agree that a court or courts may be established by the United States in said Territory, with such jurisdiction and organized in such manner as may be prescribed by law : *Provided*, That the judicial tribunals of the nation shall be allowed to retain exclusive jurisdiction in all civil and criminal cases arising within their country in which members of the nation, by nativity or adoption, shall be the only parties, or where the cause of action shall arise in the Cherokee Nation, except as otherwise provided in this treaty." Though the stipulation does not show that Mayfield was a native of the Cherokee Nation, it does show that he was one-fourth Indian by blood, and a citizen of the Cherokee

tribe, and his petition alleges that he has resided there all his life, an allegation which, taken literally, would indicate that he was born there. If this section be operative, we see no reason to doubt that this is a criminal case arising within the Cherokee Nation, in which an adopted member of the nation is the only party; and that it also falls within the other clause of the section, as a case where the cause of action has arisen in the Cherokee Nation. The District Court held that the proviso of this section above quoted was not effective until a court had been established in the Indian country, "with jurisdiction over offences generally;" and that, as this had not been done, the thirteenth article did not become operative "as a means of defining the jurisdiction of the Indian courts." We are unable to give our assent to this conclusion. On March 1, 1889, Congress passed an act entitled "An act to establish a United States court in the Indian Territory, and for other purposes," 25 Stat. 783, c. 333, with criminal jurisdiction extending over the Indian Territory, but limited to cases "not punishable by death or by imprisonment at hard labor." While the crime of adultery is punishable simply in the penitentiary for a term not exceeding three years, such imprisonment may, under chapter 9, title 70, of the Revised Statutes, be executed in a penitentiary where hard labor is exacted of all convicts, and it follows that it is, in effect, imprisonment at hard labor, and therefore not within the jurisdiction of this newly established court. *Ex parte Karstendick*, 93 U. S. 396; *In re Mills*, 135 U. S. 263.

Now if the establishment of any court at all were necessary to give validity to the proviso of the thirteenth article, upon which we express no opinion, we think the establishment of any court sitting in such territory under the direct authority of the United States, and having a general jurisdiction, is adequate for that purpose. Indeed, the object of the proviso seems to be, not so much the establishment of a new jurisdiction dependent upon the happening of a certain event, as a recognition of a jurisdiction already existing. As the seventh article of the treaty limited the power of the court proposed to be created, and of the district courts already existing, to cases

of which this was not one, it would seem to follow that offences not there described were intended to be cognizable in the Indian courts, and that the thirteenth article was inserted as a further declaration or recognition of that fact.

There is, however, another act not alluded to in the opinion of the District Court, passed after the offence is alleged to have been committed, but before the indictment was filed, which contains a further recognition of the native courts, and is pertinent in this connection. We refer to the act of May 2, 1890, 26 Stat. 81, c. 182, entitled "An act to provide a temporary government for the Territory of Oklahoma, to enlarge the jurisdiction of the United States Court in the Indian Territory, and for other purposes." The thirtieth section of this act contains the following proviso: "That the judicial tribunals of the Indian nations shall retain exclusive jurisdiction in all civil and criminal cases arising in the country in which members of the nation by nativity or by adoption shall be the only parties." The thirty-first section of said act also contains the following as its concluding paragraph: "The Constitution of the United States and all general laws of the United States which prohibit crimes and misdemeanors in any place within the sole and exclusive jurisdiction of the United States, except in the District of Columbia, and all laws relating to national banking associations, shall have the same force and effect in the Indian Territory as elsewhere in the United States; but nothing in this act shall be so construed as to deprive any of the courts of the civilized nations of exclusive jurisdiction over all cases arising wherein members of said nations, whether by treaty, blood or adoption, are the sole parties, nor so as to interfere with the right and power of said civilized nations to punish said members for violation of the statutes and laws enacted by their national councils where such laws are not contrary to the treaties and laws of the United States."

The policy of Congress has evidently been to vest in the inhabitants of the Indian country such power of self-government as was thought to be consistent with the safety of the white population with which they may have come in contact, and to encourage them as far as possible in raising themselves

to our standard of civilization. We are bound to recognize and respect such policy and to construe the acts of the legislative authority in consonance therewith. The general object of these statutes is to vest in the courts of the nation jurisdiction of all controversies between Indians, or where a member of the nation is the only party to the proceeding, and to reserve to the courts of the United States jurisdiction of all actions to which its own citizens are parties on either side.

It is needless to say that the fact, if it be a fact, that the laws of the Cherokees make no provision for the punishment of the crime of adultery, would not extend to the courts of the United States a power to punish this crime that did not otherwise exist. As Mayfield was a member of the Cherokee Nation by adoption, if not by nativity, and was the sole party to these proceedings, we think it is clear that under the treaties and acts of Congress he is amenable only to the courts of the nation, and that his petition should be granted.

The point is taken in the brief submitted by the Attorney General that the Supreme Court has no power to consider this question upon an application for a writ of *habeas corpus*. This court has held, however, in a multitude of cases, that it had power to inquire with regard to the jurisdiction of the inferior court, either in respect to the subject matter or to the person, even if such inquiry involved an examination of facts outside of, but not inconsistent with, the record. *Ex parte Yerger*, 8 Wall. 85; *Ex parte Virginia*, 100 U. S. 339; *Ex parte Ca˅ll*, 106 U. S. 521; *Ex parte Yarbrough*, 110 U. S. 651; *Ex parte Bigelow*, 113 U. S. 328; *Re Nielsen*, 131 U. S. 176; *Re Savin*, 131 U. S. 267. In *Re Cuddy*, 131 U. S. 280, it was held directly, that where the petitioner had been committed for a contempt, he was at liberty, upon application for a writ of *habeas corpus*, to allege and prove facts not contradictory to the record, which went to show that the court was without jurisdiction.

Upon the facts of this case, which are fully discussed in the briefs of counsel, the petitioner is entitled to his discharge. His petition for a writ of *habeas corpus* is therefore

*Granted.*