## OSSENFORT v. PULASKI.

### No. 12482.

United States Court of Appeals
Fifth Circuit.

Dec. 17, 1948.

William P. Fonville, Asst. U. S. Atty., of Dallas, Tex., for appellant.

Maxwell J. Pulaski, pro se.

Before HUTCHESON, SIBLEY, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Maxwell J. Pulaski, while serving a five year sentence for forging and pub-lishing forged narcotic prescriptions, in violation of 18 U.S.C.A. § 72 [now. § 494], filed petition for a writ of habeas corpus seeking release from his sentence on the ground that he had been deprived of his constitutional right to the assistance of counsel at his trial.

Appellant, in answer, denied generally the allegations contained in the petition for the writ.

At the hearing, the trial court found that Pulaski had not been properly advised at the time of his trial of his right to the assistance of counsel, and had not intelli-gently waived his rights in this regard. The court thereupon concluded that he was illegally restrained, and ordered him re-leased from custody under the judgment and commitment.

The pertinent portion of the judgment in the criminal proceeding under attack by this writ recites: " * * * the court advised the defendant of his right to coun-sel and asked him whether he desired to have counsel appointed by the court, and the defendant thereupon stated that he waived the right to the assistance of coun-sel. * * *"

The evidence reveals that the court re-porter who transcribed the original crimi-nal proceeding testified at the hearing on habeas corpus. The undisputed and unim-peached record proof; as deduced from this reporter's stenographic transcript of the trial, established the following facts: Pul-aski, at the time of his trial, was free on bond. His record admittedly measured to three former convictions in criminal cases. When arraigned, the charges were read to him and he entered a plea of not guilty. The court inquired whether he wished to stand trial. Pulaski replied, "I would like to see my lawyer. I would like to have some time to see a lawyer." When the Court inquired who his lawyer was, he stated that he would have to get one. The prosecuting attorney intervened to state that Pulaski had already given a full and complete signed statement to the Government respecting his guilt. Never-theless the Court ruled, " * * * if he asks time to consult a lawyer, we will give it to him. The case will be passed."

Pulaski remained free on bail. On the following day he again appeared before the Court. The Court inquired of the prosecuting attorney in Pulaski's presence if he knew with what lawyer Pulaski had conferred. The Government attorney stated in Pulaski's presence that he did not, but that Pulaski had come to him in the hall after court on the afternoon before, and had stated that he had consulted a lawyer and had decided to plead guilty. Pulaski remained silent while the foregoing remarks were passed. The charges were again read to him, after which the following colloquy occurred:

"The Court: Is your plea guilty or not guilty? Both guilty.

"The Court: Thelma Lucille Pulaski, what is your plea?[1] Guilty.

"The Court: I take it that you are husband and wife? Yes.

"The Court: In making this plea of guilty, are you doing so with the understanding that in pleading guilty, you admit the truthfulness of the things that you are charged with? Both answered yes.

"The Court: You don't care to fight the case?

"Mr. Pulaski: No.

"The Court: You don't care to have a lawyer appointed to fight the case for you?

"Mr. Pulaski: No, sir. * * *"

Pulaski testified at length in his own behalf at the habeas corpus hearing. He would not affirmatively deny that the proceedings recited by the court reporter verbatim from his stenographic transcript had actually taken place. His testimony was solely to the effect that he did not recall such proceedings.[2]

 The burden rested squarely on petitioner to establish by a preponderance of the evidence that he was denied the assistance of counsel at his trial; or, that in waiving his right to counsel, he did not understand and was not informed of the nature and substance of the charges against him. This, petitioner failed to do. Johnson v. Zerbst, 304 U.S. 458, 468, 58 S. Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; Matter of Gregory, 219 U.S. 210, 214, 31 S.Ct. 143, 55 L.Ed. 184; Ex parte Cuddy, Petitioner, 131 U.S. 280, 286, 9 S.Ct. 703, 33 L.Ed. 154; Gutterman v. Hiatt, D. C., 65 F.Supp. 285. Moreover, where, as here, the record of a criminal trial clearly supports a recitation in the judgment that defendant was adequately advised of his constitutional right to counsel, and nevertheless chose to waive such right, that judgment may not be impeached collaterally on habeas corpus by subsequent findings to the contrary, wholly inconsistent with the record. Riddle v. Dyche, 262 U.S. 333, 43 S.Ct. 555, 67 L.Ed. 1009; Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; In re Mayfield, 141 U.S. 107, 11 S.Ct. 939, 35 L.Ed. 635; Ex parte Cuddy, Petitioner, 131 U.S. 280, 9 S. Ct. 703, 33 L.Ed. 154; In re Coy, 127 U.S. 731, 8 S.Ct. 1263, 32 L.Ed. 274; Wall v. Hudspeth, 10 Cir., 108 F.2d 865.

We do not consider the recent case of Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, and similar decisions, applicable or controlling in favor of appellee here. In the Von Moltke case, petitioner was a foreigner indicted during the recent war for conspiracy under the Espionage Act, 50 U.S.C.A. §§ 32, 34. After her arrest she was held incommunicado for four days, except for consultation and advice with FBI lawyer-agents and United States attorneys. She was charged with a capital offense, the penalty for which was death or imprisonment for as long as thirty years. Here, unlike petitioner in the Von Moltke case, Pulaski was permitted to remain free on bond until his conviction, and was afforded ample opportunity by the trial court to consult independent counsel of his own choosing, and apparent-

---

[1] Pulaski and his wife were arraigned and sentenced together.

[2] "The Court: What are you going to do about that record, you applied to me on the ground that you had not been asked whether you wanted an attorney or not? A. I don't recall ever being asked.

"The Court: Didn't the record show you were asked? A. Yes, sir, the record does show it, but I don't think these records, at this time are right, to my knowledge I don't remember being asked if I wanted an attorney. * * *"

ly did so. By his own admission, he was a confirmed narcotic addict, and had been convicted on three previous occasions in the state courts. Moreover, he was familiar with court arraignment procedure in criminal cases.[3] In seeking this writ of habeas corpus, Pulaski attempts to controvert and impeach his own testimony as to his waiver of counsel at the trial, as evidenced by the original court record. Yet, when confronted with his previous record testimony, he would not emphatically dispute its correctness.

From a careful consideration of the evidence adduced as to every phase of the proceedings, we are unable to find any substantial evidence to warrant the holding that petitioner was not advised of his right to counsel, and that he did not voluntarily waive his rights in this regard. The judgment is accordingly reversed and the cause remanded with directions to discharge the writ and remand appellee into the custody of appellant for further detention.

Reversed and remanded with directions.

[3] "A. * * * I always had a trial, they were all State cases.

"Q. But, you were there on each time, were you not? A. I was brought before a Judge, yes, sir.

"Q. And you were asked whether you pleaded guilty or not guilty? A. Yes, sir.

"Q. You understood court procedure to that extent, did you not? A. Yes, sir. * * *"