**UNITED STATES of America, Appellee,**

v.

**James Wayne HOWARD, a/k/a Mark Wayne Howard, Appellant.**

**No. 80–2205.**

United States Court of Appeals, Eighth Circuit.

Submitted April 3, 1981.

Decided July 24, 1981.

Rehearing and Rehearing En Banc Denied Aug. 20, 1981.

Robert C. Riter, Jr. (argued), Riter, Mayer, Hofer & Riter, Pierre, S. D., for appellant, James Wayne Howard.

Max A. Gors, Pierre, S. D., for amicus curiae The Swift Bird Project.

Terry L. Pechota (argued), U. S. Atty., Sioux Falls, S. D., David L. Zuercher, Asst. U. S. Atty., Pierre, S. D., for appellee.

Before LAY, Chief Judge, STEPHENSON and ARNOLD, Circuit Judges.

LAY, Chief Judge.

James Wayne Howard was convicted of burglary by the State of Nebraska in 1975 and confined to the penitentiary in Lincoln, Nebraska. In January 1980 Howard was transferred by Nebraska to the Cheyenne River Swift Bird Project, a minimum security facility located in South Dakota and operated by Native Americans. On May 25, 1980, Howard was issued a temporary pass from the project, but he failed to return on time. Howard was arrested on August 5, 1980, and after a jury trial convicted of violating the Assimilative Crimes Act (ACA), 18 U.S.C. § 13, 18 U.S.C. § 1152, and S.D. Compiled Laws Ann. § 22–11A–2 by escaping from the Swift Bird Project.

Howard appeals from his conviction asserting that (1) jurisdiction will not lie under the ACA for the crime of escape, (2) his escape was an offense against the person or property of other Indians within the meaning of 18 U.S.C. § 1152 and thus not punishable under the ACA, (3) the trial court improperly instructed the jury, took judicial notice of controverted facts, and excluded his defense of duress and necessity, and (4) the statute under which he was convicted is unconstitutionally vague. We affirm the conviction.

### 1. *Assimilative Crimes Act (ACA).*[1]

■ Howard's escape from the Swift Bird Project constitutes a violation of S.D. Compiled Laws Ann. § 22–11A–2.[2] Where there does not exist any congressional enactment which punishes acts or omissions on federal enclaves state law may be "assimilated" under the ACA.[3] The purpose of the ACA was to fill a void in the criminal law applicable to any "place" under federal jurisdiction. Howard was assigned by state authority to serve his sentence under Nebraska law at the Cheyenne River Swift Bird Project. The Swift Bird Project is a tribal, nonprofit corporation existing under the ordinances and constitution of the Cheyenne River Sioux Tribe located on the Cheyenne River Sioux Indian Reservation in Dewey and Ziebach counties in central South Dakota. The purpose of the Swift Bird Project is to provide an alternative, minimum security correctional facility for Native Americans. Howard's escape was not an escape from the custody of the Attorney General or otherwise violative of the federal escape statute, 18 U.S.C. § 751(a).[4]

Presumably, because Howard's escape was not made punishable by an act of Congress, the indictment charged Howard under the ACA, which assimilates the escape statute under S.D. Compiled Laws Ann. § 22–11A–2. Howard argues, however, that because the federal escape statute prohibits the generic crime of escape the Government cannot prosecute him for escape from state custody. We disagree.

Howard's argument that he cannot be prosecuted under the ACA relies on analogies to *Williams v. United States*, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946), and *United States v. Butler*, 541 F.2d 730 (8th Cir. 1976). In *Williams*, the Court held that the ACA did not make the Arizona statutory rape law applicable to prosecute a married white man for having sexual intercourse on the reservation with an Indian woman over 16 years of age. The federal carnal knowledge statute affixed the age of consent at 16, the Arizona statute set the age of consent at 18. One basis for the Court's holding that the ACA did not apply

1. 18 U.S.C. § 13 provides:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

2. S.D. Compiled Laws Ann. § 22–11A–2 provides:

Any prisoner who escapes is guilty of a Class 4 felony. If such prisoner is under sentence of imprisonment, his sentence on conviction for an escape shall commence following the expiration of the term of the last sentence of his imprisonment.

S.D. Compiled Laws Ann. § 22–11A–1 provides:

The term "prisoner" when used in this chapter, includes every person who is in custody by being under arrest or by being under process of law issued from a court of competent jurisdiction, whether civil or criminal. A prisoner at the time of his escape need not be in a place designated for the keeping of prisoners.

The term "escape" when used in this chapter includes departure without lawful authority or failure to return to custody following a temporary leave granted for a specific purpose or limited period.

3. 18 U.S.C. § 1152 provides in part:

Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

4. 18 U.S.C. § 751(a) provides:

(a) Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or if the custody or confinement is for extradition or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both.

was that the man's conduct was "made punishable" by federal adultery laws. 327 U.S. at 717, 66 S.Ct. at 781. The second ground was preemption. The federal carnal knowledge statute was part of a comprehensive scheme of federal definitions of sex crimes in areas subject to congressional jurisdiction. The Court determined that assimilation of the state law would impermissibly interfere or add to the already comprehensive federal definitions. *Id.* at 717–18, 66 S.Ct. at 781. The prosecution was barred from selectively choosing the broader state definition of the federal crime. Similarly, in *Butler*, this court held that the ACA and state law could not be used to broaden the definition of the federal crimes of possession and receipt of firearms by felons because Congress intended not to punish such acts by felons on the reservation other than as it had already specifically provided under 18 U.S.C.App. § 1202(a)(1) and 18 U.S.C. § 922(h). 541 F.2d at 734–35. Howard's argument is that the federal escape statute, 18 U.S.C. § 751, establishes comprehensive and exclusive requirements for all federal prosecutions of escape and, consequently, anyone who does not violate section 751 cannot be punished by the United States for escape.

■ We find this argument untenable. It misconstrues *Williams* and our holding under *Butler*. In those cases federal prosecutors, by use of the ACA, attempted to redefine federal crimes by adding new elements to the crimes by use of state law. This is in clear violation of the ACA. In the present case there is no federal statute which makes the escape from state or tribal authority in Indian country a federal crime. Section 751 punishes only those escapees who were originally confined or in custody under federal law in the sense that they were held in the custody of the Attorney General or in custody by an order or process issued under the laws of the United States by a competent court or official. The generic crime covered is not just escape, but escape from federal custody. Section 751 does not punish escapees from state custody, even though the escape is from a facility on federal land. Thus, there is no duplication even in a generic sense of the crimes involved. Federal prosecution is necessitated because the escape occurred on a federal reservation. Since there exists no congressional enactment punishing the act in question the ACA is clearly applicable.[5]

■ No conflict exists between section 751 and the assimilation of S.D. Compiled Laws Ann. § 22–11A–2.[6] In the absence of

**5.** Amicus from the Swift Bird Project states Howard could be prosecuted for a misdemeanor by the Tribal Court. This would require extradition by the Tribe since he was not apprehended on the Cheyenne River Reservation. Amicus urges this could only be done by agreement. This argument does not concern us since the ACA deals only with congressional enactments and its application is not barred because a defendant might be prosecuted under tribal laws.

**6.** In the passage of section 751 Congress did not intend to punish escape from state custody even though the escape takes place on a federal reservation. It was not Congress' intent to address a type of conduct in a comprehensive and exclusive manner. In contrast, in *Butler* the court held that Congress intended to punish all acquisition and receipt of firearms by felons. The requirement that the gun itself had to have previously passed in interstate commerce, although an element of the federal crime, was not generic conduct sought to be prohibited. As we stated in *Butler*:

Under the receipt laws of § 922(h) and § 1202(a) the felon need not even know that the gun had traveled in interstate commerce. The interstate commerce element is satisfied by proof that *the gun* (not the felon in possession) has passed at some time in interstate commerce.

In *Barrett v. United States*, 423 U.S. 212 [96 S.Ct. 498, 46 L.Ed.2d 450], the Court held that the interstate commerce nexus requirement of § 922(h) could be met by proof that the firearm had previously traveled in interstate commerce. The Court cited the language of § 922(h), *the structure of the Title* IV of the Omnibus Act and the "manifest purpose of Congress" as supportive of their conclusion. In discussing the legislative history, the Court emphasized the purpose of Congress in passing Title IV as opposed to Title VII, was not directed to interstate trafficking in firearms but, rather, to the acquisition and possession of firearms by certain classes of people. *Id.* at 219–21 [96 S.Ct. at 502].

The added requirements of proof of an interstate nexus and of venue under a federal

such conflict, we cannot infer from the congressional prohibition of escape from federal custody that Congress intended to exempt from federal prosecution persons who escape from the custody of state officials while on federal reservations. We conclude federal prosecution under the ACA and S.D. Compiled Laws Ann. § 22–11A–2 is not preempted by section 751.[7]

### 2. *Offenses By One Indian Against Another.*

■ Howard argues that his escape from the Swift Bird Project, a project owned and operated by Indians, was an offense "against the person or property of another Indian ..." and, therefore, not punishable under the ACA.[8] Escape has often been characterized as an offense against the authority which designated the place of confinement, even though actual or physical detention is the immediate responsibility of other authorities. *United States v. Cluck,* 542 F.2d 728, 735 (8th Cir. 1976) (escape from county hospital designated as place of

federal confinement was escape from federal custody); *United States v. Hobson,* 519 F.2d 765, 770 (9th Cir. 1975) (escape from state correctional facility designated by Attorney General as place of confinement was escape from federal custody); *Frazier v. United States,* 339 F.2d 745 (D.C.Cir.1964) (escape from hospital); *Tucker v. United States,* 251 F.2d 794 (9th Cir. 1958) (escape from county hospital). In 1980, Nebraska designated the Swift Bird Project as the place of confinement, pursuant to a Nebraska statute and a contract with the project. While there, Howard remained in the constructive custody of the State of Nebraska. Thus, Howard is being punished for an offense against the State of Nebraska, for acts on a federal reservation in violation of S.D. Compiled Laws Ann. § 22–11A–2 and the ACA. He is not being punished for an offense "against ... another Indian" within the meaning of 18 U.S.C. § 1152.

■ Since Howard's escape constitutes an offense against non-Indians, this case does not involve merely the relations of

---

receipt charge do not serve to make the state law applicable and the federal law inapplicable under the ACA. If they did the test of applicability of the ACA would be whether the exact same elements of proof are required under the state and federal laws. *Williams* holds directly to the contrary. The test is not whether the same elements of proof are contained in both state and federal statutes, but whether the acts of the defendant are made punishable under *any* enactment of Congress. As *Williams* makes clear, "acts" under the ACA does not refer to "individual acts of the parties" but, rather, in a "generic sense" to acts of a general type or kind which are prohibited. In addition, Congress in enacting the ACA did not intend that the assimilation of state law was to depend on a prosecutor's selection of a statute under which it would be easier to obtain a conviction.
*United States v. Butler,* 541 F.2d 730, 736–37 (8th Cir. 1976).

7. This case is more like *United States v. Goodwin,* 637 F.2d 250 (D.C.Cir.1981), where a federal *regulation* requiring drivers *to* obey "voice, hand or whistle" traffic signals of United States Park Police did not preempt assimilation of and prosecution under a Maryland statute making it criminal to elude a police officer's flashing lights. *Id.* at 256. In *United States v. Eades,* 633 F.2d 1075 (4th Cir. 1980), a federal assault statute, 18 U.S.C. § 113, did not preempt prose-

cution under the ACA and a Maryland sexual offense statute because Congress had not intended to deal comprehensively, or even generally, with sex offenses by enactment of the assault statute. *See also United States v. Brown,* 608 F.2d 551 (5th Cir. 1979) (18 U.S.C. § 113 did not bar federal prosecution under ACA and Texas child abuse statute); *United States v. Smith,* 574 F.2d 988 (9th Cir. 1978) (federal rape statute, 18 U.S.C. § 2031, and assault statute, 18 U.S.C. § 113, did not bar federal prosecution under ACA and Washington sodomy statute for homosexual rape in a federal penitentiary); *United States v. Marcyes,* 557 F.2d 1361 (9th Cir. 1977) (Consumer Product Safety Act, 15 U.S.C. § 2051, and Federal Hazardous Substances Act, 15 U.S.C. § 1261, did not preempt federal prosecution under ACA and Washington statute for possession of fireworks on a federal reservation).

8. 18 U.S.C. § 1152 provides in pertinent part:

This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

Indians among themselves, to which the general laws of the United States should not apply absent specific congressional mandate. *Cf. United States v. Quiver,* 241 U.S. 602, 36 S.Ct. 699, 60 L.Ed. 196 (1916); *In re Mayfield,* 141 U.S. 107, 11 S.Ct. 939, 35 L.Ed. 635 (1891).

### 3. *Scienter.*

■ The trial court instructed the jury that the Government must prove beyond a reasonable doubt that Howard "knowingly failed to return to custody...." The court also instructed the jury that an "act is 'knowingly' done, if done voluntarily and intentionally, and not because of mistake or accident, or other innocent reason." Howard asserts error and claims that the jury should have been instructed that the crime of escape requires proof of a specific intent to escape. Although Howard's precise objection is unclear, we conclude that the court's instructions comply with both federal and state requirements. *United States v. Bailey,* 444 U.S. 394, 408, 100 S.Ct. 624, 633, 62 L.Ed.2d 575 (1980); *State v. Kiggins,* 86 S.D. 612, 200 N.W.2d 243, 244 (S.D.1972).

### 4. *Duress or Necessity Defense.*

■ Howard asserts error because the trial court refused to give an instruction on duress or necessity to the charge of escape. The trial court rejected the proffered instruction because it found no duress or necessity and no offer to surrender or return to custody as soon as the claimed duress or necessity had lost its coercive force. *Bailey,* 444 U.S. at 415, 100 S.Ct. at 637. We find no error.[9]

Affirmed.

---

**9.** Howard also asserts that inclusion of the words "a court of competent jurisdiction," in S.D. Compiled Laws Ann. § 22–11A–1 renders the statute unconstitutionally vague. He argues, as well, that the court erred in taking judicial notice that the Nebraska state court which originally sentenced Howard is a court of competent jurisdiction within S.D. Compiled Laws Ann. § 22–11A–1. Both of these arguments are without merit.