**UNITED STATES of America, Plaintiff–Appellee,**

*v.*

**Vincent Earl WAITES, Defendant–Appellant.**

**No. 99–30037.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 1999

Filed Jan. 4, 2000

---

Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, Oregon, for the defendant-appellant.

Baron C. Sheldahl, Assistant United States Attorney, Portland, Oregon, for the plaintiff-appellee.

Before: ALDISERT,\* KLEINFELD and FLETCHER, Circuit Judges.

ALDISERT, Circuit Judge:

The question for decision is whether the federal Assimilative Crimes Act, 18 U.S.C. § 13(a), as interpreted by the teachings of *Lewis v. United States*, 523 U.S. 155, 118 S.Ct. 1135, 140 L.Ed.2d 271 (1998), permits application of the Oregon criminal trespass statute to certain conduct committed within a U.S. Post Office. Appellant Vincent Earl Waites contends that his conviction

and sentence for misdemeanor violation of 18 U.S.C. §§ 7(3), 13, trespass in a federal facility, were infirm because the magistrate judge invoked the Assimilative Crimes Act and applied the Oregon trespass statute, instead of applying Part 232 of Title 39, Code of Federal Regulations (Conduct on Postal Property).

Waites is a homeless man who lived in Astoria, Oregon in 1996. During this time, he often tried to sleep in the Astoria Post Office, which remained open 24 hours per day to allow citizens open access to the facility. The local postmaster, Lewis Kinder, directed him not to remain on the post office premises, unless he planned on transacting legitimate postal business. The record shows that the postmaster wrote him a letter, asking him not to sleep in the post office. E.R. at 127. Upon receipt of the letter, Waites confronted Postmaster Kinder and objected to the request to vacate. E.R. at 127–128. Moreover, he insisted that he had a civil right to sleep in the post office. Notwithstanding the postmaster's warnings, he continued to sleep in the post office. On four separate occasions from March to April 1996, Special Deputy U.S. Marshals asked him to leave the premises and Waites refused. His refusal to comply with the orders of the security personnel took place on Sunday, March 31, 1996, at 6:30 a.m.; Sunday, April 6, 1996, at 4:30 a.m.; Thursday, April 10, 1996, at 3:45 a.m.; and Friday, April 11, 1996, shortly after midnight. *See* E.R. at 136–138, 141–144, 146–147, 147–149. As a result of his refusal to vacate, Waites received four separate citations, the first pursuant to 39 C.F.R. § 232.1 (Conduct on postal property) and the next three pursuant to § 232.1(e) (Disorderly conduct).

In the district court the government charged him with four counts of violating the assimilated Oregon trespass statute. At trial before the magistrate judge, he

\* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit,  sitting by designation.

timely filed a motion for judgment of acquittal in which he challenged the sufficiency of the evidence. His motion for acquittal was denied, and he later was convicted in a bench trial. He argued that the Assimilative Crimes Act was improperly applied in an unsuccessful appeal of his conviction and sentence to the district court. This appeal followed.

Appellant contends that the state trespass law should not be assimilated because 39 C.F.R. § 232.1 precludes assimilation. Alternatively, if the Oregon trespass law is assimilated, he argues that the evidence was insufficient to convict as a matter of law.

The magistrate judge had jurisdiction pursuant to 18 U.S.C. § 3401. The district court had jurisdiction pursuant to 18 U.S.C. § 3402. We have jurisdiction pursuant to 28 U.S.C. § 1291. The appeals were timely filed under Rule 4, Federal Rules of Appellate Procedure.

Because the district court's interpretations of the Assimilative Crimes Act and 39 C.F.R. § 232.1 are questions of law, our standard of review is plenary. *Tierney v. Kupers*, 128 F.3d 1310, 1311 (9th Cir.1997).

## I.

In *Lewis v. United States*, the Court has supplied us with detailed guidance in determining whether the Assimilative Crimes Act ("ACA" or "Act") assimilates a state statute:

> In our view, the ACA's language and its gap-filling purpose taken together indicate that a court must first ask the question that the ACA's language requires: Is the defendant's "act or omission ... made punishable by *any* enactment of Congress." 18 U.S.C. § 13(a) (emphasis added). If the answer to this question is "no," that will normally end the matter. The ACA presumably would assimilate the statute. If the answer to the question is "yes," however, the court must ask the further question whether the federal statutes that apply

to the "act or omission" preclude application of the state law in question, say, because its application would interfere with the achievement of a federal policy, *see Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 389–390, 64 S.Ct. 622, 88 L.Ed. 814 (1944), because the state law would effectively rewrite an offense definition that Congress carefully considered, *see Williams [v. United States]*, 327 U.S. [711], 718, 66 S.Ct. 778, 90 L.Ed. 962 [ (1946) ], or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue, *see id.* at 724, 66 S.Ct. 778 (no assimilation where Congress has "covered the field with uniform federal legislation"). *See also Franklin [v. United States]*, 216 U.S. [559], 568, 30 S.Ct. 434, 54 L.Ed. 615 [ (1910) ] (assimilation proper only where state laws "not displaced by specific laws enacted by Congress").

> There are too many different state and federal criminal laws, applicable in too many different kinds of circumstances, bearing too many different relations to other laws, to common-law tradition, and to each other, for a touchstone to provide an automatic general answer to this second question. Still, it seems fairly obvious that the Act will not apply where both state and federal statutes seek to punish approximately the same wrongful behavior-where, for example, differences among elements of the crimes reflect jurisdictional, or other technical, considerations, or where differences amount only to those of name, definitional language, or punishment. *See, e.g., United States v. Adams*, 502 F.Supp. 21, 25 (S.D.Fla.1980) (misdemeanor/felony difference did not justify assimilation).

> . . . .

> ... The primary question (we repeat) is one of legislative intent: Does applicable federal law indicate an intent to punish conduct such as the defendant's to

the exclusion of the particular state statute at issue?

523 U.S. at 164–165, 166, 118 S.Ct. 1135.

## II.

■ The Assimilative Crimes Act promotes the even-handed application of state law to local conduct that the federal law does not punish and, but for the situs being a federal enclave, would qualify as a local offense. The Act provides:

> Whoever within or upon any [federal enclave] is guilty of any act or omission which, although not made punishable by any act of Congress, would be punishable if committed or omitted within the jurisdiction of the State ... in which such place is situated, ... shall be guilty of a like offense and subject to like punishment.

18 U.S.C. § 13(a). The legislation's basic purpose is "one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves." *Lewis,* 523 U.S. at 160, 118 S.Ct. 1135.

Appellant contends that he should not have been tried under the Oregon trespass statute, Or.Rev.Stat. § 164.245, because federal postal regulations preclude assimilation. He argues that the federal postal regulations are comprehensive and "cover[ ] a broad range of disruptive activities that interfere with the function of the post office." Appellant Br. at 18.

In his primary presentation before us, Waites insists that 39 C.F.R. § 232.1(e) punishes his conduct and that therefore the Oregon trespass statute should not have been the basis of his prosecution. Subsection 232.1(e) (Disturbances) provides:

> Disorderly conduct, or conduct which ... obstructs the usual use of entrances, foyers [or] corridors, ... or which otherwise tends to impede or disturb the public employees in the performance of their duties, or which otherwise impedes or disturbs the general public in trans-

acting business or obtaining the services provided on the property, is prohibited.

39 C.F.R. § 232.1(e).

Appellant also argues before us, as he did before the district court, that 39 C.F.R. § 232.1(d) is another federal enactment that covers his alleged improper conduct. *See* Appellant Br. at 19, 20; E.R. at 60, 61 (Appellant's opening brief in the District Court for the District of Oregon, submitted March 30, 1998). Subsection § 232.1(d) (Conformity with signs and regulations) provides:

> All persons in and on [federal postal] property shall comply with official signs of a prohibitory or directory nature, and with the directions of security force personnel or other authorized individuals.

39 C.F.R. § 232.1(d).

Waites was convicted under the Oregon second degree criminal trespass statute, as assimilated:

> A person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully in or upon premises.

Or.Rev.Stat. § 164.245(*l* ).

In Oregon, second degree criminal trespass is a Class C misdemeanor, which carries a maximum prison term of 30 days and a maximum fine of $1000. *See* Or. Rev.Stat. § 164.245(2). Violation of 39 C.F.R. § 232.1(d) or (e) results in a fine of not more than $50 or imprisonment of not more than 30 days, or both. 39 C.F.R. § 232.1(p)(2). Although the penalties are similar, at oral argument Appellant contended that had he been prosecuted under the federal regulations, he could have asserted a defense not available under an indictment based on the assimilated state statute. He would have argued that the Astoria post office had failed to post Title 39, Part 232 of the Code of Federal Regulations "at a conspicuous place on [the postal] property," as required by 39 C.F.R. § 232.1(a).

## III.

We now turn to the teachings of *Lewis v. United States*. To determine whether the ACA provides for assimilation of state law, *Lewis* instructs that the first question to ask is whether the defendant's act or omission was made punishable by "any enactment of Congress." *Lewis*, 523 U.S. at 164, 118 S.Ct. 1135 (quoting 18 U.S.C. § 13(a)).

Here, the district court concluded that Waites' conduct was made punishable by 39 C.F.R. § 232.1(e), an enactment of Congress, because "[r]emaining, and especially sleeping, in the post office may impede or disturb the general public and/or post-office employees in transacting business." E.R. at 112. We are not persuaded, however, that the facts here bring Waites' conduct within the regulatory construct of 39 C.F.R. § 232.1(e).

■ Under 39 C.F.R. § 232.1(e), disorderly conduct requires some conduct which disturbs or impedes the general public or the postal employees in transacting business. The alleged disturbances occurred on two Sunday mornings, one at 4:30 the other at 6:45; on a Thursday morning at about 3:45; and just after midnight on a Friday evening. There is no evidence that the times and places where Waites was sleeping and was directed by the Marshal Service to leave the premises impeded postal employees or the general public in transacting business.

Accordingly, we conclude that Waites' conduct was not punishable under 39 C.F.R. § 232.1(e). This determination, however, does not end our inquiry, because Appellant also contends that subsection 232.1(d) covers his conduct.

## IV.

■ We are persuaded that Appellant's conduct was punishable under subsection (d), because Waites failed to comply with the directions of "security force personnel or other authorized individuals." Postmaster Kinder, obviously an "authorized individual[ ]" under the regulation, wrote Waites a letter requesting that he not sleep on the premises. Indeed, after receiving the letter, Waites confronted the postmaster and insisted that he had a civil right to sleep in the public facility. Moreover, on four separate occasions, Special Deputy U.S. Marshals, obviously "security force personnel" as contemplated in the regulation, directed Waites to leave the premises under threat of arrest.

Although the district court did not address § 232.1(d) and the parties before us primarily emphasized the relevance of § 232.1(e) (Disorderly conduct), rather than § 232.1(d) (Conformity with signs and regulations), we believe that subsection (d) is the controlling federal law to be considered in determining whether it was proper to apply the Assimilative Crimes Act in these proceedings. Accordingly, we answer the first prong of the inquiry required by *Lewis v. United States* by holding that Appellant's "act or omission" is made punishable by subsection (d), which qualifies as "any enactment of Congress." 18 U.S.C. § 13(a); *see United States v. Adams*, 502 F.Supp. 21, 25 (S.D.Fla.1980) ("[W]here a duly authorized federal regulation of general applicability prohibits a precise act, that act shall be considered an act or omission punishable by an 'enactment of Congress' within the meaning of the [ACA]."), *cited with approval in Lewis*, 523 U.S. at 165, 118 S.Ct. 1135.

We now proceed to the second prong of the test mandated by the teachings of *Lewis*. Once we conclude that a federal enactment punishes Appellant's conduct, we are instructed to decide whether the applicable federal law "preclude[s] application of the state law in question." *Lewis*, 523 U.S. at 164, 118 S.Ct. 1135.

## V.

■ *Lewis* teaches that the primary inquiry in deciding whether the ACA assimilates a state statute is "one of legislative intent: Does applicable federal law

indicate an intent to punish conduct such as the defendant's to the exclusion of the particular state statute at issue?" *Lewis,* 523 U.S. at 166, 118 S.Ct. 1135. The state statute will not be assimilated if, for example, (a) its application would conflict with federal policy; (b) it would effectively rewrite an offense definition that Congress carefully considered; or (c) the federal statutes reveal an intent to occupy so much of a field as to exclude use of the particular state statute. *Id.* at 164, 118 S.Ct. 1135 (citing cases).

■ Where "both state and federal statutes seek to punish approximately the same wrongful behavior," it seems "fairly obvious that the Act will not apply." *Id.* at 165, 118 S.Ct. 1135. Where the state and federal statutes punish approximately the same behavior, then the second question required by *Lewis*-whether the federal statutes preclude assimilation-is typically answered in the affirmative, because the state statute most probably (a) would conflict with federal policy-namely, Congress' interest in seeing uniform application of federal enclave law to control conduct on federal property; (b) would rewrite an offense definition that Congress carefully considered; and/or (c) would attempt to shoehorn a gap in the federal enclave law where the federal law preempts assimilation with uniform legislation. Thus, where state law and federal law seek to punish approximately the same wrongful behavior, we need not look very far into legislative intent to ascertain whether the federal law indicates an intent to punish the defendant's conduct at the exclusion of the state statute. Because there is no gap to be filled in the federal enclave law by the state statute in such a case, the intent to exclude application of state law is obvious, and the state law is not assimilated.

### A.

■ The Oregon criminal trespass statute prohibits conduct where the person "enters or remains unlawfully in or upon premises." Or.Rev.Stat. § 164.245(*l*).

Furthermore, § 164.205 provides that to "[e]nter or remain unlawfully" means "to fail to leave premises that are open to the public *after being lawfully directed to do so by the person in charge.*" Or.Rev.Stat. § 164.205(3)(b) (emphasis added). The applicable federal regulation prohibits noncompliance "with the directions of security force personnel or other authorized individuals." 39 C.F.R. § 232.1(d).

Although the specific words of the state statute and the federal regulation are not identical, each of them, in the language of *Lewis,* "seek[s] to punish approximately the same wrongful behavior," 523 U.S. at 165, 118 S.Ct. 1135 to-wit, remaining on premises after being lawfully directed to leave. We conclude that the state statute is not assimilated here because its application would frustrate Congress' interest in the uniform application of federal enclave law. It would rewrite distinctions carefully considered by Congress and would attempt to fill a gap in the federal enclave law where no gap exists.

*Lewis* teaches also that any federal provision that punishes the defendant's "act or omission" precludes application of the state statute, if the federal law "reveal[s] an intent to occupy so much of a field as would exclude use of the particular state statute at issue." 523 U.S. at 164, 118 S.Ct. 1135. Where Congress has "covered the field with uniform federal legislation," assimilation is improper. *Id.* at 164–165, 118 S.Ct. 1135 (quoting *Williams v. United States,* 327 U.S. 711, 724, 66 S.Ct. 778, 90 L.Ed. 962 (1946)).

Congress clearly has an interest in the uniform application of federal enclave law to conduct occurring on federal property. This interest is effected by applying federal laws, rather than various state statutes, to conduct occurring on federal property. Conceding that Waites' conduct is punished by 39 C.F.R. § 232.1(d) and by the Oregon trespass law because both the state and federal law punish approximately the same conduct, the federal govern-

ment's policy interest in seeing the uniform application of the federal enclave law controls and thus precludes assimilation of the state law.

**B.**

We must now address the non-abrogation provision of subsection 232.1(p)(2), which provides:

> Nothing contained in these rules and regulations shall be construed to abrogate any other Federal laws or regulations or any State and local laws and regulations applicable to any area in which the property is situated.

39 C.F.R. § 232.1(p)(2).

 The non-abrogation clause of subsection (p)(2) manifests an intent not to preclude assimilation of any state or federal laws not already provided for in the federal postal regulations. We believe that this language does not automatically invite assimilation of all state laws. The state law also must fill a gap in the federal criminal law that applies on federal enclaves. *See Lewis,* 523 U.S. at 160, 118 S.Ct. 1135.

A state law punishing conduct occurring on federal postal property will be assimilated only where (1) the state law is not precluded by the postal regulations; and (2) the state law does not punish approximately the same conduct as the federal law. Here, subsection 232.1(d) punishes approximately the same conduct as the Oregon trespass statute, namely, remaining on premises after being lawfully directed to leave. The state law will not be assimilated because there is no gap here to trigger operation of the non-abrogation clause. To hold otherwise would be to rule that the non-abrogation clause of subsection (p)(2) would have the tendency to trump every relevant federal statute. We do not perceive this to have been the intent of Congress.

\*    \*    \*

In light of the view we take, it is not necessary to address other contentions. We hold that the Act does not assimilate the Oregon statute, because the federal regulations comprehensively regulate Appellant's conduct. It was therefore improper to prosecute Appellant under the Oregon statute. Accordingly, the district court erred by affirming the magistrate judge's judgment of conviction.

REVERSED.