**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

DAT QUOC DO,
*Defendant-Appellant.*

No. 19-30138

D.C. No.
3:17-cr-00431-SI-1

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted December 8, 2020
Seattle, Washington

Filed April 19, 2021

Before: M. Margaret McKeown and Paul J. Watford,
Circuit Judges, and Barbara Jacobs Rothstein,[*]
District Judge.

Opinion by Judge McKeown

---

[*] The Honorable Barbara Jacobs Rothstein, United States District Judge for the Western District of Washington, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel reversed the defendant's convictions for two counts of unlawful use of a weapon (UUW) under Oregon law, Or. Rev. Stat. § 166.220(1)(a), which federal prosecutors assimilated into federal law by the Assimilative Crimes Act (ACA), 18 U.S.C. § 13(a); and remanded for further proceedings.

The defendant, a passenger in a car on a highway in the Warm Springs Indian Reservation, fired six shots in the air after a passenger in a car in front of him threw a plastic bottle at his car.

The panel addressed whether the government was permitted to borrow from Oregon law in this way, applying the two-part test set out in *Lewis v. United States*, 523 U.S. 155 (1998), for determining whether the ACA assimilates a particular state criminal law. As to the first part, the panel agreed with the parties that the defendant's conduct is punishable under the federal assault statute, 18 U.S.C. § 113(a). Because the conduct is punishable under the federal assault statute, the panel next asked whether the federal assault statute precludes application of Oregon's UUW statute. The panel concluded that it does because (1) the federal assault statute and Oregon's UUW statute seek to punish approximately the same wrongful behavior; (2) the federal assault statute reveals an intent to occupy the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

field of assault to the exclusion of Oregon's UUW statute; and (3) assimilating Oregon's UUW assault statute into federal law would effectively rewrite an offense definition that Congress carefully considered.

## COUNSEL

Elizabeth G. Daily (argued), Assistant Federal Public Defender; Gerald M. Needham, Federal Public Defender; Office of the Federal Public Defender, Portland, Oregon; for Defendant-Appellant.

Amy E. Potter (argued), Appellate Chief; Suzanne Miles, Assistant United States Attorney; Billy J. Williams, United States Attorney; United States Attorney's Office, Portland, Oregon; for Plaintiff-Appellee.

## OPINION

McKEOWN, Circuit Judge:

This appeal arises from a road rage incident on a highway in the Warm Springs Indian Reservation in central Oregon. Dat Quoc Do, who was a passenger in a car driven by his girlfriend, fired six shots in the air after a passenger in the car in front of him threw a plastic soda bottle at his car. Rather than charge Do under the federal assault statute, federal prosecutors invoked the Assimilative Crimes Act ("ACA" or "the Act"), 18 U.S.C. § 13(a), and assimilated into federal criminal law Oregon's unlawful use of a weapon ("UUW") statute, Or. Rev. Stat. § 166.220(1)(a). Do was tried and convicted in federal court of violations of Oregon law.

The question before us is whether the government was permitted to borrow from Oregon law in this way. We conclude that it was not because assimilation is permitted only where necessary to fill gaps in federal criminal law on federal enclaves, and there was no such gap here. We reverse Do's convictions under Oregon's UUW statute and remand for proceedings consistent with this opinion. In view of this reversal, we do not consider Do's other arguments on appeal.

## BACKGROUND

While Do and his girlfriend, Thao Tran, were driving through the Warm Springs Indian Reservation on a single-lane highway, a car driven by AV1 pulled out in front of them.[1] AV1 was driving slowly, and Tran began tailgating her car. AV1 and AV2 proceeded to gesture at Tran, including flashing their middle fingers. AV2 then leaned out of the car window and threw a plastic soda bottle at Tran's car.

Do then pulled a gun from his backpack, lowered his window, and fired three shots "toward the sky." The cars then reached the passing lane, and Tran pulled into the left lane to pass AV1's car. As Tran overtook AV1's car, Do again rolled down his window and fired his gun three times.

Do was charged with two counts of UUW under Oregon law, assimilated into federal law by the ACA. Before trial, Do filed a motion to dismiss the indictment, arguing that the

---

[1] To protect the identities of the victims, Do and the government agreed to refer to them with anonymous designations. Throughout this opinion, we adopt the convention used by the government and the district court and refer to the victims as Adult Victim 1 ("AV1") and Adult Victim 2 ("AV2").

federal assault statute precluded assimilation of Oregon's UUW statute under the ACA. After the district court denied this motion, Do proceeded to trial on the UUW charges, and the jury returned guilty verdicts on both counts. The district court sentenced Do to probation for a term of three years. Do timely appealed.

## ANALYSIS

The ACA provides that, in places under federal jurisdiction—including Indian country—a person who

> is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a); *see also United States v. Smith*, 925 F.3d 410, 415 (9th Cir. 2019) (holding that the ACA applies to Indian country). In other words, the ACA "assimilates into federal law, and thereby makes applicable on federal enclaves . . . certain criminal laws of the State in which the enclave is located." *Lewis v. United States*, 523 U.S. 155, 158 (1998). Its "basic purpose" is thus "one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves." *Id.* at 160. In doing so, the Act "promotes the even-handed application of state law to local conduct that the federal law does not punish and, but for the situs being a federal enclave, would qualify as a local

offense." *United States v. Waites*, 198 F.3d 1123, 1127 (9th Cir. 2000).

Using the ACA, the government charged Do with violating Oregon's UUW statute,[2] which, in relevant part, punishes "[a]ttempt[ing] to use unlawfully against another . . . any dangerous or deadly weapon." Or. Rev. Stat. § 166.220(1)(a). Whether the ACA properly assimilates Oregon's UUW statute is a question of law that we review de novo. *United States v. Souza*, 392 F.3d 1050, 1052 (9th Cir. 2004).

In determining whether the ACA assimilates a particular state criminal law, we apply the two-part test set out in *Lewis v. United States*. *See* 523 U.S. at 164–66. First, we ask whether the "defendant's 'act or omission [is] made punishable by *any* enactment of Congress.'" *Id.* at 164 (quoting 18 U.S.C. § 13(a)). "If the answer to this question is 'no,' that will normally end the matter," and the "ACA presumably would assimilate the statute." *Id.* If, however, the answer to this first question is "yes," we then ask a second question: "whether the federal statutes that apply to the 'act or omission' preclude application of the state law in question." *Id.* This second question is primarily one of legislative intent and requires us to probe whether the

---

[2] Though we use the term "Oregon's UUW statute" throughout this opinion, we refer only to the "attempts to use" prong of subsection (1)(a) of that statute. *See* Or. Rev. Stat. § 166.220(1)(a); *see also United States v. Willis*, 795 F.3d 986, 995 (9th Cir. 2015) (concluding that subsection (1)(a) of Oregon's UUW statute is divisible into two separate offenses: "(1) attempting to use a deadly weapon unlawfully against another (the 'attempt offense'), and (2) carrying or possessing a deadly weapon with intent to use it unlawfully (the 'possession offense')"). Neither subsection (1)(a)'s "possession" prong nor subsection (1)(b)'s prohibition on discharging a weapon within city limits is at issue here.

"applicable federal law indicate[s] an intent to punish conduct such as the defendant's to the exclusion of the particular state statute at issue." *Id.* at 166.

Though there are no "automatic general answer[s]" to this second question, *id.* at 165, the assimilation of state law is precluded:

> (1) where state law "would interfere with the achievement of a federal policy"; (2) where "state law would effectively rewrite an offense definition that Congress carefully considered"; and (3) where "federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue."

*Souza*, 392 F.3d at 1052–53 (quoting *Lewis*, 523 U.S. at 164–65). *Lewis* further instructs that the assimilation of state law will "obvious[ly]" be precluded "where both state and federal statutes seek to punish approximately the same wrongful behavior," and differences between the two "reflect jurisdictional, or other technical, considerations" or "amount only to those of name, definitional language, or punishment." *Lewis*, 523 U.S. at 165.

## I. Do's Conduct is Made Punishable by the Federal Assault Statute

Applying *Lewis*'s two-part test here, we ask first whether Do's conduct is made punishable by *any* enactment of Congress. On this point, there is no dispute. We agree with the parties that Do's conduct is punishable under the federal assault statute.

The federal assault statute, as amended in 2013, punishes eight different forms of assault, including, as relevant here, "[a]ssault with a dangerous weapon, with intent to do bodily harm" and "[s]imple assault." 18 U.S.C. § 113(a)(3), (5). The statute incorporates the common-law definition of assault as (1) "a willful attempt to inflict injury upon the person of another," or (2) "a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *United States v. Lewellyn*, 481 F.3d 695, 697 (9th Cir. 2007) (quoting *United States v. Dupree*, 544 F.2d 1050, 1051 (9th Cir. 1976)).

Do's conduct of firing his gun six times while tailgating and subsequently passing AV1's car is undoubtedly punishable as simple assault under 18 U.S.C. § 113(a)(5) and may also be punishable as assault with a dangerous weapon under 18 U.S.C. § 113(a)(3) if Do possessed the requisite intent to do bodily harm.

## II. The Federal Assault Statute Precludes Application of Oregon's UUW Statute

Because Do's conduct is punishable under the federal assault statute, we next ask whether that statute precludes application of Oregon's UUW statute. We conclude that it does for three reasons: first, the federal assault statute and Oregon's UUW statute "seek to punish approximately the same wrongful behavior," *Lewis*, 523 U.S. at 165; second, the federal assault statute "reveal[s] an intent to occupy" the field of assault to the exclusion of Oregon's UUW statute, *id.* at 164; and third, assimilating Oregon's UUW statute into federal law would "effectively rewrite an offense definition that Congress carefully considered," *id.*

**A. The Federal Assault Statute and Oregon's UUW Statute Seek to Punish the Same Wrongful Behavior**

Though named differently, the federal assault statute and Oregon's UUW statute target approximately the same wrongful conduct—assault. *See Lewis*, 523 U.S. at 165. As discussed above, the federal assault statute incorporates the common-law definition of assault, criminalizing both attempts and threats to inflict injury. *See Lewellyn*, 481 F.3d at 697. Oregon's statute likewise incorporates the common-law definition of assault, criminalizing both the infliction of harm or injury and the threat of immediate harm or injury. *See State v. Ziska*, 334 P.3d 964, 970 (Or. 2014) (en banc) (interpreting Oregon's UUW statute as criminalizing the "employment of a weapon to *inflict* harm or injury," as well as the "employment of a weapon to *threaten* immediate harm or injury" (emphasis added)).

That Oregon's statute criminalizes assault is underscored by the fact that, under Oregon law, convictions for assault and UUW merge into one another. *See, e.g.*, *State v. Zolotoff*, 280 P.3d 396, 397 (Or. Ct. App. 2012); *State v. Ryder*, 216 P.3d 895, 896–97 (Or. Ct. App. 2009). Because both the federal and state statutes punish "approximately the same wrongful behavior," the federal assault statute precludes application of Oregon's UUW statute.

The government views the statutes from a different perspective, namely that they *do not* seek to punish approximately the same wrongful behavior because the Oregon legislature wrote the UUW statute to target weapon use, not general assaults. Oregon's legislative intent is evident, according to the government, in the statute's placement in the "Offenses Against Public Order" chapter, rather than in the "Offenses Against Persons" chapter, where

other assault statutes are located. But the focus on the *Oregon* legislature obscures the relevant inquiry. While the *Lewis* test requires courts to discern legislative intent, it is the intent of Congress—*not* the Oregon legislature—that is relevant to this inquiry. And, even if the Oregon legislature's intent were relevant, the government concedes that the "ultimate legislative concern of [the UUW statute] is preventing harm to *persons*." *State v. Crawford*, 171 P.3d 974, 980 (Or. Ct. App. 2007) (emphasis added).

The government also insists that Oregon's UUW statute addresses a more specific concern than the federal assault statute and thus "properly fill[s] a gap in federal law by punishing . . . *specific* behavior" that the general federal assault statute does not address. *United States v. Rocha*, 598 F.3d 1144, 1151 (9th Cir. 2010) (emphasis added). Not so. Both the federal assault statute *and* Oregon's UUW statute punish assault with a dangerous weapon. *Compare* 18 U.S.C. § 113(a)(3), *with* Or. Rev. Stat. § 166.220(1)(a). Because Oregon's UUW statute does not punish any "specific behavior" not already proscribed by the federal assault statute, the UUW statute fills no gap.

### B. The Federal Assault Statute Occupies the Field of Assault to the Exclusion of Oregon's UUW Statute

The federal assault statute also "reveal[s] an intent to occupy so much of [the] field as would exclude use" of Oregon's UUW statute. *Lewis*, 523 U.S. at 164. As we concluded in *United States v. Rocha*, "the federal assault statute's comprehensive definitions reveal Congress's intent to *fully occupy* the field of assault on a federal enclave." 598 F.3d at 1150 (emphasis added). This conclusion is of even more force here, as the federal assault statute in effect when Do was charged—and that remains in effect today—is

even more comprehensive than the earlier version at issue in *Rocha*. *Compare* 18 U.S.C. § 113(a) (2019) (criminalizing eight different forms of assault), *with id.* (2005) (criminalizing seven different forms of assault). Because the "comprehensive nature of the federal assault statute reveals that Congress intended to occupy the field of assault *at the exclusion of* [state assault statutes]," and Oregon's UUW statute criminalizes assaultive conduct, we easily conclude, as we did in *Rocha*, that the federal assault statute precludes the state statute's application. *See Rocha*, 598 F.3d at 1151 (emphasis added) (concluding that the federal assault statute intended to occupy the field of assault at the exclusion of California's assault statute).

The government claims that *Rocha* is inapposite because there we concluded that the federal assault statute occupies the field of assault crimes, and Oregon's UUW statute is not an assault statute. This argument elevates form over substance in a way *Lewis* cautions against. *See Lewis*, 523 U.S. at 165 (noting that "differences amount[ing] only to those of name, definitional language, or punishment" cannot justify assimilation of a state law offense). Though not *labeled* an assault statute, Oregon's UUW statute mirrors the common-law definition of assault and criminalizes assaultive conduct, as the government concedes.

The government also argues that *Rocha* illustrates that courts most often reject assimilation where the state and federal statutes at issue are direct analogues. But, as *Lewis* instructs and our precedent well demonstrates, assimilation may be precluded even where state and federal statutes are not direct analogues, so long as the state statute punishes approximately the same conduct. *See Waites*, 198 F.3d at 1129 (concluding that Oregon's criminal trespass statute could not be assimilated into federal law because it punished

the same wrongful behavior as a federal regulation prohibiting noncompliance with directions on postal property).  Oregon's UUW statute does just that.

## C. Assimilating Oregon's UUW Statute Would Rewrite the Federal Assault Statute's Offense Definitions

Finally, assimilating Oregon's UUW statute into federal law would "effectively rewrite an offense definition that Congress carefully considered." *Lewis*, 523 U.S. at 164. The federal assault statute reflects policy judgments made by Congress as to what forms of assaultive conduct should be punishable under federal law and to what extent. *See Rocha*, 598 F.3d at 1150 ("Although there are other formulations Congress might have adopted, in § 113 Congress addressed key policy questions . . . ."). Under federal law, assault with a dangerous weapon, which carries a maximum sentence of 10 years, requires that the defendant had an "*intent to do bodily harm.*"  18 U.S.C. § 113(a)(3) (emphasis added).  If the government believed it could not prove that Do had such an intent—which it conceded at oral argument—then, under federal law, it could charge him only with simple assault, which carries a maximum sentence of six months. *See id.* § 113(a)(5).  By contrast, Oregon's UUW statute, which carries a maximum sentence of 5 years, *does not* require the government to prove an intent to do bodily harm. *See* Or. Rev. Stat. § 166.220(1)(a); *see also* Or. Rev. Stat. § 161.605(3) (setting 5 years as the maximum sentence for a Class C felony).

The disparity in punishment presented a dilemma for the government.  Rather than settling for simple assault's six-month maximum sentence, the government availed itself of the state statute's higher statutory maximum.  Explaining this strategy, the government noted: "The government had

two choices: one, charge a misdemeanor assault or . . . charge the most appropriate state statute . . . ."). In responding to the query, "The reason why you did this and created this problem for yourself is because you wanted the higher statutory max?", the government replied, "Absolutely." But the ACA is not intended to operate in this pick-and-choose way. The Act's application is predicated on analysis of the federal statute, not a prosecutorial desire to obtain a higher sentence.

*Rocha* admonishes that where the two statutes punish the same wrongful behavior, the government may not "bypass[] . . . lesser sentence charges" under the federal statute by using a state statute with a higher maximum term of imprisonment. *Rocha*, 598 F.3d at 1152. Doing so would impermissibly rewrite the Congressional framework of crime and punishment.

## CONCLUSION

We reverse Do's convictions because Oregon's UUW statute was improperly assimilated under the ACA.

**REVERSED and REMANDED for proceedings consistent with this opinion.**